# GEORGE W. SICARAS *v.* CITY OF HARTFORD ET AL.
## (15439)

Dupont, C. J., and Landau and Spear, Js.

Argued January 14—officially released April 22, 1997

*William A. Snider*, for the appellant (plaintiff).

*Karen K. Clark*, with whom, on the brief, were *Bourke G. Spellacy* and *M. Catherine Healy*, for the appellees (defendants).

DUPONT, C. J. The plaintiff former chief of police of the defendant city of Hartford (city) appeals from the judgment of the trial court, *Berger, J.*, enforcing a settlement agreement signed by the plaintiff and corporation counsel for the city. The plaintiff claims that the settlement agreement is unenforceable because (1) it required the subsequent approval of the city's pension committee, (2) the corporation counsel lacked authority to settle on behalf of the city and (3) the plaintiff signed the agreement under duress. We affirm the judgment of the trial court.

Prior to the judgment that is the subject of this appeal, the parties[1] appeared before the trial court, *Corradino, J.*, for trial on March 15, 1994. After some discussions and before beginning trial, the parties signed a settlement agreement that was read onto the record in open court on the same day.[2] Judgment did not enter in

[1] The defendants are the city of Hartford, Woodrow Wilson Gaitor, former city manager, Richard Goldstein, corporation counsel, Richard Cosgrove, deputy corporation counsel, Francisco Borges, an elected city councilman, Thirman Milner, mayor, Henry Langley, special assistant to the city manager, and Alfred Gatta, city manager.

[2] The settlement agreement provides as follows: "The undersigned parties have agreed, in full settlement of the claims in the case *Sicaras* v. *City of Hartford et al.*, CV-87-0337342S, which is pending in the Superior Court for the Judicial District of Hartford-New Britain at Hartford, as follows:

"One: The City will recommend that the Pension Commission for the City of Hartford approve a pension for George Sicaras in accordance with the following figures: $19,620.66 annually, $1,635.06 monthly, based upon documents calculated and supplied by the City Treasurer's Office.

"Two: The City of Hartford shall pay to George Sicaras the following sums upon approval by the Pension Commission:

"(A) $201,111.77 in pension benefits due from November 1983 through January 1994. An additional amount of pension benefits will be payable upon approval of the Pension Commission for the period February 1994 through the date of approval of the Pension Commission.

accordance with the agreement, but both parties signed and then filed a withdrawal of action with the court. On January 27, 1995, after several communications between the parties in which they expressed disagreement as to the meaning of the terms of the agreement, the plaintiff informed the city that he would not agree to the settlement. Subsequently, on February 3, 1995, the defendants filed motions to restore the case to the docket, to enforce the settlement agreement, and for judgment in accordance with the settlement agreement, to which the plaintiff objected. The trial court, *Berger, J.*, granted the motions, restored the case to the docket and rendered judgment enforcing the agreement.

The trial court found certain relevant facts. In 1987, the plaintiff brought suit pro se against the defendants

"(B) $73,376.72, representing 6 percent interest on the sum reflected in item (A) above

"(C) $3,638.09 in interest on pension contributions taken in error from the plaintiff.

"Three: From the above sums the City will deduct $3,041.68, representing interest on contributions owed to the MERF.

"Four: In addition, the City of Hartford will pay to George Sicaras $20,000 in full settlement of the plaintiff's claims for administrative time.

"Five: In exchange for the foregoing sums, the plaintiff, George Sicaras, agrees that the City may file the attached withdrawal of action upon the Pension Commission's approval of above pension sums. The plaintiff also agrees to execute a release of any and all claims he has, has had or that Hartford's past or present representatives, officials, employees, Pension Commission, or agents specifically in connection with the offer in the pending action, any pending worker's compensation claim, except for claim number BP33767P (April 22nd, 1971) regarding a back injury, his employment with the City of Hartford, and his pension. This release shall be entered into before any sums are paid to the plaintiff under this agreement.

"Six: The City and all other named defendants expressly deny any wrongdoing in connection with plaintiff's claim and are entering into this agreement solely to avoid the costs of protracted litigation.

"Seven: The parties have further agreed that the City of Hartford will prepare a statement to be placed in Mr. Sicaras's personnel file which will reflect the contents of his favorable performance evaluations received in the past as police chief from Woodrow Wilson Gaitor, then city manager. The statement will be used to respond to inquiries about the plaintiff's performance."

in order to obtain certain pension, medical, severance, and other benefits that he claimed he did not receive upon termination of his employment.[3]

Although the plaintiff had been represented by counsel after he brought suit, on the day that his case was scheduled for trial and he signed the settlement agreement, he appeared pro se, accompanied by his wife.[4] At the end of the negotiations that day, the parties agreed that the plaintiff would sign certain releases of workers' compensation claims and make submittals to the pension commission, and that the city would make certain payments and place a "name clearing letter" in the plaintiff's personnel file. Approximately one week later, the releases of the workers' compensation claims were sent to the plaintiff for his signature. On March 29, 1994, the plaintiff sent the city documents that he wanted included in his personnel letter. On March 30, 1994, a copy of the letter was sent to the plaintiff, and on April 1 the plaintiff expressed dissatisfaction with it and also indicated that he did not have the documents ready that were required for his pension application. On April 1, the city submitted a revised personnel letter, and on May 11 the city wrote to the plaintiff to express interest in finalizing the settlement agreement. The plaintiff responded on May 14, 1994, requesting certain pension changes and indicating that he was still dissatis-

---

[3] The plaintiff also brought suit in federal court, alleging wrongful termination pursuant to 42 U.S.C. § 1983 and violations of his rights pursuant to the first and fourteenth amendments of the United States constitution. The magistrate for the United States District Court for Connecticut rendered summary judgment for the defendants. The plaintiff filed an objection, and United States District Court Judge Peter C. Dorsey accepted, adopted and affirmed the judgment, rendering summary judgment for the defendants.

[4] His counsel had withdrawn her appearance prior to trial. On the day of trial, the plaintiff attempted to reach another attorney who had represented him in his pension negotiations with the city but found that he was unavailable. Attorney Anna Crawford represented the defendants in the negotiations and was accompanied by Attorney Maria Cone, deputy corporation counsel for the city of Hartford.

fied with the letter. On June 22, 1994, the city wrote to the plaintiff asking him to complete the releases. Finally, on January 27, 1995, the plaintiff informed the city that he would not agree to the settlement. The trial court held two hearings on the defendants' motions, including the motion to enforce the settlement agreement, before rendering its judgment that the settlement should be enforced.

I

Before we can reach the merits of the plaintiff's claims, we must consider the threshold issue of whether the trial court had jurisdiction to restore the plaintiff's case to the docket eleven months after both parties had signed and filed a withdrawal of the action with the court.

It is clear from the record before us that, although the parties read, in open court, the settlement agreement that they signed on March 15, 1994, the court did not render judgment incorporating the agreement. This is clear because (1) the transcript of March 15, 1994, indicates that Judge Corradino made comments to the parties about their comprehension of the agreement, but not about its content, and directed the parties to withdraw their case with the clerk, (2) the docket sheet in the trial court file refers to the March 15, 1994 interaction as "agreement" not as "judgment" or "order," and (3) the defendants titled their motion of February 3, 1995, a "motion to enforce settlement agreement and for entry of judgment in accordance with settlement agreement." The question we must resolve is whether a court retains jurisdiction over an action after both parties have signed withdrawals of it and judgment was never rendered.

Withdrawals are analogous to final judgments. "The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by § 52-80, is absolute and

unconditional. Under [the] law, the effect of a with-drawal, so far as the pendency of the action is con-cerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket. *Housing Authority of East Hartford* v. *Hird*, 13 Conn. App. 150, 157, 535 A.2d 377, cert. denied, 209 Conn. 825, 552 A.2d 433 (1988), quoting *Lusas* v. *St. Patrick's Roman Catholic Church Corpora-tion*, 123 Conn. 166, 170, 193 A.2d 204 (1937)." (Internal quotation marks omitted.) *H. G. Bass Associates, Inc.* v. *Ethan Allen, Inc.*, 26 Conn. App. 426, 431, 601 A.2d 1040 (1992); see also *Baker* v. *Cordisco*, 37 Conn. App. 515, 520, 657 A.2d 230 (1995).

Because withdrawals are analogous to final judg-ments, we next consider whether there is a finite time period during which a withdrawal can be "opened," just as there is a finite time period during which final judgments can be opened. See General Statutes § 52-212a; Practice Book § 326.[5] We reason that the motion to restore a case to the docket is the vehicle to "open" a withdrawal, while the motion to open is the vehicle to open judgments. The issue of timeliness is of concern in this case, the defendants having filed the motion to restore the case to the docket eleven months after the withdrawal. A motion to restore a case to the docket

[5] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court . . . ."

Practice Book § 326 provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdic-tion, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months of the entry of judgment. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court. . . ."

must have a jurisdictional time limitation in the same way as a motion to open.

"We take judicial notice of the practice among presiding trial judges to require counsel to submit withdrawals when the in-court settlement is reached, prior to the execution of the settlement agreement. This practice provides an efficient method of clearing the court's docket. The trial court often instructs the parties that if difficulties arise upon effectuating the settlement, either party may request that the case be restored to the docket *provided it is requested during the time period in which the court maintains jurisdiction.* See, e.g., General Statutes § 52-212a. Either party may then proceed under the original jurisdiction of the court without the necessity of instituting another cause of action." (Emphasis added.) *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 806 n.3, 626 A.2d 729 (1993).[6]

The facts in *Audubon* are nearly identical to those presented here, with three differences. Two differences are inconsequential, whereas the other difference could be crucial. Unlike in this case, the parties did not sign the agreement in *Audubon*. That distinction is not significant, however, because in both cases the parties

---

[6] The plaintiff in *Audubon* sought to recover for the defendants' breach of a commercial lease. During jury selection on May 15, 1990, the parties announced to the trial judge that they were ready to settle the case, and read the settlement agreement in open court. The trial judge requested that the parties file withdrawals before they left the courtroom for the sake of administrative convenience. Thereafter, the plaintiffs filed a motion to restore the case to the docket in the form of a motion to open. On August 15, 1990, the trial judge restored the matter to the docket and ordered jury selection to commence on August 21, 1990. On August 20, 1990, the plaintiff filed a motion entitled "Motion for Judgment In Accordance with and Enforcement of Contract of Settlement." On October 1, 1990, the trial court granted the motion and rendered judgment for the plaintiff in accordance with the settlement agreement. See *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 26 Conn. App. 181, 182–83, 599 A.2d 395 (1991), rev'd in part, 225 Conn. 804, 626 A.2d 729 (1993).

assented in open court to each provision of the agreements. Parties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated. *Schwarzschild* v. *Martin,* 191 Conn. 316, 321, 464 A.2d 774 (1983). The plaintiff in *Audubon* moved to restore the case to the docket by filing a motion to open. The defendants here filed a motion to restore the case to the docket, which is a difference without significance. The third difference is that the *Audubon* plaintiff's motion was within the time period prescribed by § 52-212a, whereas, the defendants' motion in this case was not. If the defendants in this case had filed their motion to restore the case to the docket within four months of March 15, 1994, the court would, on the basis of the *Audubon* precedent, have retained its original jurisdiction. Our question, however, is whether the court also retains jurisdiction when a motion is filed more than four months after the withdrawal of the action.

General Statutes § 52-212a applies to the restoration of a case to the docket as well as to the opening of judgments. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs,* supra, 225 Conn. 806 n.3. The statute provides that "[t]he parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court . . . ." Section 52-212a, therefore, relates not to jurisdiction over the subject matter, but to jurisdiction over the person or parties. *In re Baby Girl B.,* 224 Conn. 263, 288, 618 A.2d 1 (1992). "The express inclusion in § 52-212a of a provision that the parties may waive the four month limitation underscores the fact that the statute deals with personal and not with subject matter jurisdiction." Id. Here, we conclude that the parties waived the four month limitation and submitted to the jurisdiction of the court. The defendants moved to restore the case to the docket as a precursor to their motion to enforce the settlement

agreement. The plaintiff also waived the four month limitation by requesting, in his opposition to the defendants' motion, that the case be restored to the docket. We conclude that the trial court had jurisdiction to restore the case to the docket.

The question of whether a case should be restored to the docket is one of judicial discretion. See *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 391, 685 A.2d 1108 (1996). We cannot say that the court abused its discretion in restoring the case to the docket.

II

The plaintiff raises three issues in his appeal of the trial court's judgment enforcing the settlement agreement. He argues that the settlement agreement is unenforceable because it required approval from the pension committee. He claims that without prior approval of the pension committee, the city had the power to negate the contract, rendering it illusory. Second, he claims, under the plain error doctrine, that corporation counsel for the city did not have the authority to settle the case, and that, therefore, the contract is voidable. Third, he claims that the conditions under which he consented to the settlement constituted duress. We are unpersuaded.

We first address the plaintiff's claim that the settlement agreement is unenforceable because it required that the pension committee approve the calculations agreed to by the parties. The plaintiff argues that the city and the pension committee are one and the same, and that the provision requiring approval allows, in effect, the city of Hartford to negate the agreement at any time. This, argues the plaintiff, renders the contract illusory. We will assume for the purposes of the plaintiff's argument that the city and the pension committee are in effect one unit. Even if such is the case, we do not agree that as a result the contract is illusory.

Both parties agree that the pension committee's approval of the agreement is a condition precedent to the enforcement of the contract. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence." (Citations omitted.) *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951); *Bauman & Garrity of Lakeville, Inc.* v. *George E. Emerson, Inc.*, 14 Conn. App. 261, 265, 540 A.2d 710 (1988).[7]

The plaintiff argues that the condition precedent of approval makes the contract illusory because the condition is within the control of the promisor. The occurrence or failure of the condition, however, is not within the promisor's complete control. There are restrictions on the promisor's alleged ability to prevent the condition from occurring. "If there is a restriction, express or implied, on the promisor's ability to terminate or to refuse to perform, the promise is not illusory. The tendency of the law is to avoid the finding that no contract arose due to an illusory promise when it appears the parties intended a contract." 2 A. Corbin, Contracts (Rev. Ed. 1995) § 5.28, p. 149.

The committee could not reject the plaintiff's pension application on a whim. The agreement that the parties signed states: "The City will recommend that the Pension Committee for the City of Hartford approve a pension for George Sicaras in accordance with the following figures. . . ." The pension committee administers the retirement system for city employees, includ-

---

[7] We note that we never reach the question of whether the condition in this case was fulfilled. The pension committee has never reviewed the plaintiff's eligibility or the terms of his pension because the plaintiff did not submit an application to the committee.

ing the municipal employees' retirement fund (MERF). See Hartford Municipal Code, ch. XVII, § 2. The plaintiff was a participant in MERF prior to his retirement. The pension committee must review pension applications in accordance with the provisions of the municipal code. See appendix to City Charter, § 21 (f). Clearly, there are guidelines that the pension committee must follow when approving or rejecting pensions, and the fact that a pension application from the plaintiff is submitted pursuant to an agreement does not remove those guidelines.

We also read into the agreement an implied obligation of good faith by the city to provide a pension for the plaintiff. "An implied obligation to use good faith is enough to avoid the finding of an illusory promise." A. Corbin, supra, § 5.28, pp. 149–50. Good faith in the context of this agreement as it relates to the performance by the city to recommend a pension for the plaintiff is consistent with the common purpose of both the city and the plaintiff and is consistent with their justified expectations. See *Warner* v. *Konover,* 210 Conn. 150, 155, 553 A.2d 1138 (1989).

The plaintiff and the defendants, by agreeing to the settlement of the plaintiff's action, have, in effect, agreed that the best interests of the plaintiff and the city would be served by granting the plaintiff a pension. There is no evidence that the city did not make an effort to comply with its obligation under the agreement to recommend a specific pension for the plaintiff to the committee. In fact, it is the plaintiff who thwarted the execution of this provision of the agreement because he failed even to apply to the committee.

The plaintiff makes the related claim that the settlement agreement is not an enforceable contract because the approval of the workers' compensation commission is required for those portions of the agreement regard-

ing his waiver of certain workers' compensation claims. The plaintiff's argument, which is the same as his argument concerning approval by the pension committee, is that the agreement is an illusory contract because it gives the workers' compensation commission the power to reject it. The two issues, however, are not identical. The requirement of approval of the pension committee was expressly stated in the agreement as a condition precedent. The requirement of the approval of the workers' compensation commission was not. General Statutes § 31-296 requires the workers' compensation commissioner to approve all agreements between employers and injured employees if the commissioner finds that the agreement conforms to the provisions of the Workers' Compensation Act.[8] The parties, therefore, had no choice but to incorporate an existing statute as a condition precedent to their agreement.

" 'Unless the agreement indicates otherwise, [an applicable] statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein.' *Hatcho Corporation* v. *Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985)." *Harlach* v. *Metropolitan Property & Liability Ins. Co.*, 221 Conn. 185, 192, 602 A.2d 1007 (1992). The agreement need not expressly state the need for the commissioner's approval in order to be valid. In addition, even if the commissioner were to reject the provisions regarding

---

[8] General Statutes § 31-296 provides in relevant part: "If an employer and an injured employee . . . reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding on both parties as an award by the commissioner. . . ."

the plaintiff's claims, there would be no effect on the remainder of the agreement, which would still be enforceable. We conclude that the approval of the workers' compensation commissioner as a condition precedent to the portion of the agreement dealing with the plaintiff's waiver of his workers' compensation claims does not affect the enforceability of the settlement agreement.

The plaintiff's second argument to substantiate his unenforceability claim is that the corporation counsel did not have authority to bind the city. Specifically, the plaintiff claims that the Hartford municipal code requires that the city council approve all settlements entered by corporation counsel, and, therefore, corporation counsel did not have authority to bind the city to the agreement. The plaintiff's argument is similar to the one he makes regarding the pension committee, namely, that the city had the power to negate the contract if the council did not approve it, and, therefore, the contract is illusory.

Before we discuss the merits of the plaintiff's claim, we must consider whether it has been properly preserved for review because we need not review claims that were not distinctly raised at trial. Practice Book § 4061. We note that this claim was not raised in the plaintiff's complaint, nor was it considered by the trial court in its memorandum of decision. The transcripts indicate that the plaintiff also did not raise the issue orally at either of the hearings on the defendants' motions to enforce the settlement agreement, to restore the case to the docket or to render judgment in accordance with the settlement agreement.

The plaintiff argues that the claim *was* raised in the trial court, but in different language. He maintains that his arguments that there was no meeting of the minds

and that the agreement was ambiguous[9] include his claim of lack of authority on the part of corporation counsel. We do not agree.

"Meeting of the minds" is defined as "mutual agreement and assent of two parties to contract to substance and terms. It is an agreement reached by the parties to a contract and expressed therein, or as the equivalent of mutual assent or mutual obligation." Black's Law Dictionary (6th Ed. 1990). This definition refers to fundamental misunderstandings between the parties as to what are the essential elements or subjects of the contract. It refers to the terms of the contract, not to the power of one party to execute a contract as the agent of another. The plaintiff argues that the lack of a meeting of the minds is the same claim as a lack of authority by the corporation counsel to bind the city, and that the latter claim that he now makes was, therefore, distinctly raised even though not well articulated. After a thorough review of the record, we conclude that the plaintiff's use at trial of the phrase "meeting of the minds" referred to the plaintiff's alleged misunderstanding of the settlement negotiations and the resulting agreement, not to an alleged lack of authority of corporation counsel. There is not a sufficient nexus between the claim made at trial and the plaintiff's claim on appeal to support the plaintiff's argument that the same claim was previously distinctly raised but not well articulated. We, therefore, agree with the defendants that this claim was not previously raised, and we decline to review the claim.

The plaintiff argues, in the alternative, that his claim should be reviewed under the plain error doctrine. Although we are not bound to review an unpreserved

[9] Ambiguity is defined as: "Duplicity, indistinctness, or uncertainty of meaning of an expression used in a written instrument. . . . Language in contract is 'ambiguous' when it is reasonably capable of being understood

claim, we "may in the interests of justice notice plain error not brought to the attention of the trial court." Practice Book § 4061. Plain error review is reserved for very specific situations. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995)." (Internal quotation marks omitted.) *Santopietro* v. *New Haven,* 239 Conn. 207, 216, 682 A.2d 106 (1996). "The doctrine of plain error should be invoked sparingly. To hold otherwise would undermine the requirement that claims of law be raised in the trial court in the first instance. . . . *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 760, 535 A.2d 1292 (1988)." (Internal quotation marks omitted.) *Total Property Services of New England, Inc.* v. *Q.S.C.V., Inc.*, 30 Conn. App. 580, 593, 621 A.2d 316 (1993).

Our precedents illustrate that plain error review is not appropriate in this case. "An important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice. . . . Plain error review may be appropriate where consideration of the question is in the interest of public welfare or of justice between the parties." (Citations omitted; internal quotation marks omitted.) *DiNapoli* v. *Cooke,* 43 Conn. App. 419, 426, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996). In addition, we have found plain error to be available where a new and unforeseen constitutional right has arisen between the trial and the appeal. See *Brubeck* v. *Burns-Brubeck,* 42 Conn. App. 583, 588,

in more than one sense." Black's Law Dictionary (6th Ed. 1990). The plaintiff points to no language in the agreement that he claims is ambiguous as far as concerns the authority of the corporation counsel to bind the city. We, therefore, do not discuss this claim.

680 A.2d 327 (1996). None of these situations for plain error review is present in this case.

Plain error review may be appropriate when a party seeks review of a strictly legal question that requires no finding of facts. One example of such review involves the failure of a trial court to apply an applicable statute. See *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 480 n.6, 628 A.2d 946 (1993). "Plain error review may be appropriate where the record is complete and the question is essentially one of law, so that neither party is prejudiced." *Westport Taxi Service, Inc.* v. *Westport Transit District*, supra, 235 Conn. 38.

The issue before us, however, is not solely a question of law because it is one that would require further fact-finding. The plaintiff argues that plain error review is warranted here because this court need look only at the provision in the Hartford municipal code that requires the city council to approve the actions of corporation counsel. We disagree, and agree with the defendants that, had this issue been presented to the trial court, the defendants would have had the opportunity to produce evidence of the interpretation of the code by the corporation counsel and the city council, the working relationship between the two, and the power of counsel to enter this particular binding agreement on behalf of the city. We cannot afford plain error review to this unpreserved claim because the issue of the applicability of the code is not strictly legal, but rests on a finding of subsidiary facts.

Finally, the plaintiff claims that he was under duress at the time he agreed to the settlement, and that, therefore, it is unenforceable. The trial court heard extensive testimony on this issue from the plaintiff, his wife, and the attorneys for the city, all of whom were present during the settlement negotiations.

The plaintiff has alleged that he was unable to comprehend the details of the settlement because he did not have an attorney present, because his medication prevented him from focusing, and because there were no breaks in the lengthy negotiations.

The plaintiff claims that when he appeared for trial, he was prepared to pick a jury, but not to proceed with a settlement. The plaintiff testified that during the course of the negotiations, he broke away several times to call a particular attorney. When he could not reach him, he tried to reach other attorneys. The plaintiff testified that although he was never prevented from making these telephone calls, he got the impression that the attorneys representing the city were annoyed that he was doing so. The plaintiff also testified that he never informed the trial court that he could not continue with the negotiations, or that he felt unable to negotiate without the aid of counsel. The plaintiff testified that he told the court only that he did not have his files with him that related to the pension, and he did not request a continuance.

The plaintiff's main complaint seems to be that he was not given an adequate explanation of how the final figure for his pension was calculated, even though he understood that the actual amount of money he would receive was going to be $19,620.66 in an annual pension and $201,111.71 in back pension payments with 6 percent interest. The plaintiff claims that he could not possibly understand these calculations without an attorney present. The plaintiff claims that when he asked for an accounting he was not given one. The attorneys for the city testified that he was given their handwritten notes and the opportunity to use a calculator. The plaintiff testified that he read the agreement and signed it. He also testified that he never informed the court that the discussions were beyond his comprehension, or that he could not understand the calculations.

On the basis of the record, we conclude that the plaintiff was not prejudiced by the lack of counsel at the negotiations. The plaintiff had been pro se in his case for several years before the case was scheduled for trial and the negotiations took place. "Where a party appears pro se, as he has every right to do, his rights and claim should receive the same consideration as if he had been represented by an attorney. *Martin* v. *Martin*, 188 Neb. 393, 397, 197 N.W. 2d 388 (1972)."(Internal quotation marks omitted.) *Lo Sacco* v. *Young*, 20 Conn. App. 6, 12, 564 A.2d 610 (1989). "Although we are lenient to parties who represent themselves, such leniency should not be invoked as to affect adversely the other parties' rights." Id.

The plaintiff also testified that he was threatened that he would not get his pension if he did not agree to the settlement. Corporation counsel testified that she never made such a threat, but did say that the plaintiff could not be eligible for a pension if he did not file the necessary application papers. The record shows that as of January 27, 1995, when the plaintiff informed the city that he would not comply with the agreement, he had not filed those necessary papers. The plaintiff was aware of his option to go ahead with the trial and not to pursue the settlement if he felt uncomfortable with its terms or his ability to negotiate them. He testified that he was aware that a pension was a remedy that a jury could award him. Indeed, the plaintiff argues that he was prepared to go to trial, but not to negotiate his pension.

The plaintiff adds the related claims that his need for medication combined with his lack of food on the day of the negotiations made him unable to focus on the discussions and to understand the agreement. The plaintiff's wife testified that on the day of negotiations he was taking medication for his heart, blood pressure, anxiety and sleeplessness. He did not, however, inform

the court at any time that he was taking such medication or that it prevented him from participating in any way. The witnesses' testimony is controverted relating to whether there was a lunch break.[10]

"To conclude that a stipulated judgment resulted from duress, the finder of fact must determine that the misconduct of one party induced the party seeking to avoid the stipulated judgment to manifest assent thereto, not as an exercise of that party's free will but because that party had no reasonable alternative in light of the circumstances as that party perceived them to be." *Jenks* v. *Jenks*, 232 Conn. 750, 753, 657 A.2d 1107 (1995). Clearly, the plaintiff in this case always had the reasonable alternative of proceeding with the trial or seeking a continuance. The evidence does not show that the city's attorneys induced the plaintiff's assent to the settlement against his will. In fact, at the end of the day when the parties reported a settlement to the court, the plaintiff had an opportunity to tell the judge then either that he was not satisfied with the agreement, or did not understand it. He did not, and, in fact, seemed pleased with the outcome.[11] We conclude that the plaintiff was not under duress.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The plaintiff testifies that only five to ten minutes were taken, during which time he was able to share a soda and chips with his wife. Corporation counsel testified that they had at least an hour for lunch.

[11] "The Court: Okay. Let me make an observation. [The plaintiff] is pro se, but I've been impressed by the fact that he's very familiar with this case. And I can say that both parties have spent at least the last two hours trying to hammer this out. There's been movement by both sides, and I think—I have a feeling [the plaintiff] knows what he's doing and, after long consideration of this with his wife, feels this is in his best interest. And I'm glad this was able to be resolved, and I hope you're able to get on with your life and put it behind you. And the city, I know, will always have different cases and matters to deal with. Okay?

"[The Plaintiff]: Appreciate the court's help with this matter, Your Honor."