**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2023**

# In the Court of Appeals of Georgia

A22A1587. NGM INSURANCE COMPANY v. ABATE.

MILLER, Presiding Judge.

This is a contract dispute involving an insurer's obligation to make payments under a structured settlement agreement. Following a traffic accident in the 1980s, Lisa Abate reached a settlement with National Grange Insurance Company ("NGM") (the other driver's insurer) wherein NGM agreed to make monthly payments to Abate for life. NGM obtained an annuity to make the settlement payments and, in addition, purported to assign its liability to make payments to Abate to the annuity company's parent company, First Executive Corporation. After First Executive became insolvent and was placed under a receivership, the amount of payments to Abate was eventually reduced to significantly lower than what was contractually provided. Abate sued

NGM for the difference, and the trial court granted summary judgment in Abate's favor.

NGM now appeals, contending that the terms of the settlement, release, and assignment of liability bar Abate from suit. While we conclude that the terms of the settlement agreement do not absolve NGM from liability to make the periodic payments to Abate, we agree with NGM that the trial court erroneously concluded that the assignment was void due to an illusory promise. Accordingly, we affirm the grant of summary judgment in part, reverse it in part, and remand for the trial court to address the remainder of Abate's arguments in support of her motion for summary judgment.

"On appeal from the grant of summary judgment, legal questions are reviewed de novo, and this Court also conducts a de novo review of the evidence, viewed in the light most favorable to the nonmoving party, to determine if there is a genuine issue of material fact." (Citation omitted.) *Erickson v. Walker*, 359 Ga. App. 630, 631 (859 SE2d 804) (2021).

So viewed, the record shows that Abate was severely injured in an automobile accident in Connecticut in November 1982.[1] Abate brought an action against Robert

---

[1] At the time of the incident, Abate was known as Lisa McCarthy.

and Edmond Bowen and their company, Leafland Farms, to recover for her injuries sustained during the accident. NGM provided liability coverage for the Bowens and Leafland Farms at the time of the accident.

On June 19, 1985, the parties reached a structured settlement to resolve Abate's claims wherein the defendants, through NGM, agreed to pay $1,700 per month to Abate for life, increasing at 4% per year, as well as various additional lump sum payments during certain years. The settlement provided that

> [i]n consideration of the undertaking and the payments to [Abate] of the sums of money set forth below, [Abate] does hereby release and discharge the defendant above named and any of their officers, servants, agents, employees or insurance carriers from any and all actions, causes of action, obligations, costs, damages, losses, claims, liability and demands of whatsoever character including . . . any and all causes of action arising, or which may arise in the future . . . from an incident occurring on or about November 14, 1982[.]

The settlement also contained a choice of law clause stating that Connecticut law would govern the agreement.

On the same day that the parties agreed to the settlement, NGM and Abate also signed a document called "Assignment." The document provided that

1. In consideration of the tendering of a lump sum premium payment by [NGM] ("Assignor") to First Executive Corporation . . . ("Assignee"), Assignee assumes, and Assignor assigns to Assignee, the liability of Assignor to make periodic payments in the amounts and at the times set forth in the Schedule of Payments . . . to [Abate/"Payee"] as damages on account of personal injury or sickness. Payee agrees that, by reason of such assumption and assignment, Assignor is fully released from its liability to make all periodic payments. . . . This Agreement . . . is intended to constitute a qualified assignment within the meaning of Section 130 (c) of the Internal Revenue Code.

In a separate section, the agreement also provided that

4. Assignee's obligation to make payments shall not be greater than Assignor's obligation to make such payments. To the extent that Assignor's obligation to make any payment (or any portion thereof) is invalid, unenforceable, or subject to any defenses, Assignee's obligation shall be equally invalid, unenforceable, or subject to such defenses.

Finally, the assignment also stated that it would be governed by Connecticut law.

According to NGM's business records, on June 19, 1985, NGM paid First Executive Corp. $1,000 "for the assignment." NGM also paid $299,000 to Executive Life Insurance Company to purchase an annuity that would fund the payments due

4

to Abate.[2] In 1991, First Executive became insolvent and was placed in receivership under the direction and control of the State of New York and its insurance regulators. As part of the rehabilitation plan for First Executive, Abate continued to receive the full amount of the payments due through July 2013. However, in 2011, the New York Liquidation Bureau announced that, due to the hardship of the 2008 financial market collapse, there were no longer sufficient funds to continue paying all of First Executive's annuities at full value and that the payments would be reduced as a result. In August 2013, the amount of payments received by Abate was reduced to approximately 40% of the value provided for in the settlement.

Abate filed the instant lawsuit against NGM, alleging that it was liable to pay the remaining balance, which she alleged was $52,062.87 at the time of suit. Abate filed a motion for partial summary judgment as to liability only, alleging that NGM

---

[2] The annuity listed NGM as the owner of the annuity and Abate as the annuitant. NGM's business records include a subsequent document, dated September 16, 1985, titled "Absolute Assignment," purporting to assign the annuity from NGM to "First Executive Corp." An NGM representative testified that "part of the settlement was having the absolute agreement." The Absolute Assignment document is signed by a representative of NGM, whose title is not listed, and although the document itself provides that "if the assignor is a corporation, the corporate seal must be affixed" as well as a certified copy of the resolution by the board of directors, those elements were not present. We further note that, on its letter advising Abate that her payments would be reduced, dated December 7, 2011, the Liquidation Bureau listed NGM as the owner of the annuity.

5

was liable to make up any deficiency in the payments and that its purported assignment of liability was invalid. NGM also filed a cross-motion for summary judgment on all claims. Following a hearing,[3] the trial court granted the motion for partial summary judgment. Applying Connecticut law, the trial court concluded that (1) as the drafter of the contract, any ambiguity would be construed against NGM; (2) the plain language of the Release and the Assignment did not absolve NGM of liability; and (3) in any event, NGM's purported assignment to First Executive of its liability and the responsibility to make payments under the settlement agreement failed because it was an illusory promise. Thus, the trial court concluded that NGM was still liable to make the payments under the agreement. This appeal followed.

1. NGM raises multiple arguments that the settlement agreement's release provisions released it from any liability and any further claims from Abate.[4] We

---

[3] The transcript of the hearing does not appear in the appellate record.

[4] NGM first argues that the trial court erred in concluding that it was the drafter of the contract. Under Connecticut law, "[w]here the language is ambiguous, . . . we must construe those ambiguities against the drafter." (Citations omitted.) *Cantonbury Heights Condo. Assn.*, supra, 273 Conn. at 735 (I). The trial court, however, only relied on this principle to interpret Section 4 of the assignment. As explained in Division Two, *infra*, we conclude that there was no ambiguity contained in that portion of the contract. Thus, we have no cause to address the correctness of this finding at this time.

6

conclude that these arguments are all misplaced because the Release only applied to the actual defendants, the Bowens, and did nothing on its own to release NGM from liability.

Under Connecticut law,

[i]n ascertaining the contractual rights and obligations of the parties [to a contract], we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction. We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. Where the language is unambiguous, we must give the contract effect according to its terms.

(Citations omitted.) *Cantonbury Heights Condo. Assn. v. Local Land Dev., LLC*, 273 Conn. 724, 734-735 (I) (873 A2d 898) (2005).

(a) NGM first points to the release provision of the Release and Settlement Agreement and argues that any claims were released under that provision. As recited above, that provision states that

[i]n consideration of the undertaking and the payments to [Abate] of the sums of money set forth below, [Abate] does hereby release and discharge the [Bowens] and any of their officers, servants, agents, employees or insurance carriers from any and all actions, causes of

7

action, obligations, costs, damages, loses, claims, liability and demands of whatsoever character . . . any and all causes of action arising, or which may arise in the future . . . from an incident occurring on or about November 14, 1982[.]

This provision, however, explicitly releases the Bowens and NGM from any liability for the underlying personal injury suit "[i]n consideration of the undertaking and the payments to [Abate] of the sums of money set forth below." The agreement thus clearly does not absolve NGM from continuing to make payments to Abate; indeed, the whole point of this provision is to establish Abate's right to receive payments in exchange for foreclosing any underlying legal remedies in tort.

(b) NGM next points to a provision of the Release which allowed it to assign liability to another entity provided that it could secure a "qualified assignment" under the Tax Code. This provision states that

> [t]he Parties hereto acknowledge and agree that Defendants may make a "qualified assignment" (within the meaning of section 130 (c) of the [Tax Code]) of its liability to make said periodic payments. Such assignment, if made, shall be accepted by [Abate] without right of rejection and shall completely release and discharge Defendant from such obligations hereunder as are assigned.

8

This provision, however, specifically notes that only the "Defendants" may make such an assignment, and the Settlement Agreement separately defined the defendants to only include the Bowens, not NGM. In any event, this provision only provides that an assignment of liability to make the periodic payments is possible, but it clearly does not dissolve or assign that liability in and of itself. This provision on its own therefore does not absolve NGM of liability to make the periodic payments.

Thus, we conclude that nothing in the settlement agreement itself absolves NGM of liability to make further payments to Abate.

2. NGM further argues that the terms of the Assignment released it from any further obligation to make the structured settlement payments and that the Assignment is valid and supported by consideration. Upon a fair reading of the contract, we agree with NGM that the trial court erred by concluding that the assignment was void due to an illusory promise.

> The doctrine of consideration is of course fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable. In defining the elements of the rule, we have stated that consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. An exchange of promises is sufficient consideration to support a contract.

(Citation and punctuation omitted.) *Keefe v. Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 606 (I) (A) (749 A2d 1219) (2000).

Here, the Assignment provided that First Executive assumed "the liability of NGM to make periodic payments in the amounts and at the times set forth in the Schedule of Payments . . . to [Abate.]" Additionally, under the Assignment, Abate agreed that, "by reason of such assumption and assignment, [NGM] is fully released from its liability to make all periodic payments." Abate signed and explicitly consented and agreed to the Assignment.

Abate argues that the Assignment was invalid, and the parties' promises were illusory, because the language of Section Four of the assignment rendered any purported consideration flowing from First Executive illusory, but we disagree. "[A]n illusory promise exists when a condition of the contract is completely within the control of the promisor." *LaVelle v. Ecoair Corp.*, 74 Conn. App. 710, 725 (IV) n.16 (814 A2d 421) (2003). This is because "[t]o agree to do something and reserve the right to cancel the agreement at will is no agreement at all." (Citation omitted.) *R. F. Baker Co. v. P. Ballantine & Sons*, 8 Conn. Supp. 3, 6 (1940).

The relevant section of the agreement provided that

10

4. Assignee's obligation to make payments shall not be greater than Assignor's obligation to make such payments. To the extent that Assignor's obligation to make any payment (or any portion thereof) is invalid, unenforceable, or subject to any defenses, Assignee's obligation shall be equally invalid, unenforceable, or subject to such defenses.

This section does not create a condition of the contract that is within the control of the promisor but instead merely reflects the "hornbook law . . . that an assignee stands in the shoes of the assignor . . ." so that the "assignee has no greater rights or immunities than the assignor would have had if there had been no assignment." *Shoreline Communications, Inc. v. Norwich Taxi, LLC*, 70 Conn. App. 60, 72 (II) (797 A2d 1165) (2002). Nothing in this section absolves First Executive of any obligation to make payments to Abate in a way that would render the promise to make those payments illusory – instead it merely reserves for First Executive any rights and defenses that NGM may otherwise have presented. In other words, this section does not provide First Executive with the unfettered right to cancel the agreement at will but instead limits such ability to asserting whatever rights and defenses NGM could have raised. See *Sicaras v. City of Hartford*, 44 Conn. App. 771, 780 (II) (692 A2d 1290) (1997) ("If there is a restriction, express or implied, on the promisor's ability to terminate or to refuse to perform, the promise is not illusory.") (citation omitted).

11

Moreover, "[t]he tendency of the law is to avoid the finding that no contract arose due to an illusory promise when it appears the parties intended a contract[,]" (Citation omitted.) Id., and NGM and First Executive clearly intended to create a contract with the assignment as evidenced by NGM's $1,000 payment to First Executive "for the assignment." . Consequently, the Assignment was not invalid due to an illusory promise, and the trial court erred in finding it to be unenforceable on that ground.

Thus, we conclude that the plain terms of the settlement agreement do not absolve NGM of liability, but that the purported assignment of liability to First Executive was not void due to an illusory promise. We affirm the trial court's grant of summary judgment in part, reverse in part, and remand for the trial court to address the remaining unresolved arguments in Abate's motion for summary judgment and NGM's cross-motion for summary judgment.[5]

*Judgment affirmed in part, reversed in part, and case remanded. Rickman, C. J., and Pipkin, J., concur.*

---

[5] For instance, as part of her motion for summary judgment, Abate argued that NGM "never tendered a lump sum premium payment to First Executive Corporation" as contemplated by Paragraph 1 of the Assignment, arguing that this language necessarily referred to the $299,000 lump sum premium that NGM paid to fund the annuity (which was never directly tendered to First Executive Corporation), rather than the $1,000 fee that NGM paid for the assignment. While "[w]e may affirm the trial court's grant of summary judgment if it is right for any reason, whether stated or unstated, so long as the legal basis was fairly presented in the court below," *Cook Pecan Co. v. McDaniel*, 337 Ga. App. 186, 192 (3) (b) (786 SE2d 852) (2016), the trial court did not address this point, and neither party briefed this issue on appeal. Thus, we decline to address it in the first instance and leave it and any other lurking issues to be resolved on remand.