NEBRASKA PRESS ASSN. ET AL. *v.* STUART, JUDGE

No. A–426.   Decided November 20, 1975

MR. JUSTICE BLACKMUN, Circuit Justice.

An application for stay of the order dated October 27, 1975, of the District Court of Lincoln County, Neb., resulted in my issuance of an in-chambers opinion, as Circuit Justice, on November 13. In that opinion I indicated that the issue raised is one that centers upon cherished First and Fourteenth Amendment values; that the challenged state-court order obviously imposes significant prior restraints on media reporting; that it therefore

came to me " 'bearing a heavy presumption against its constitutional validity,' " *New York Times Co.* v. *United States,* 403 U. S. 713, 714 (1971); that if no action on the application to the Supreme Court of Nebraska could be anticipated before December 1, there would be a delay "for a period so long that the very day-by-day duration of that delay would constitute and aggravate a deprival of such constitutional rights, if any, that the applicants possess and may properly assert"; that, however, it was highly desirable that the issue should be decided in the first instance by the Supreme Court of Nebraska; and that "the pendency of the application before me should not be deemed to stultify that court in the performance of its appropriate constitutional duty." I stated my expectation that the Supreme Court of Nebraska would entertain, "forthwith and without delay," the application pending before it, and would "promptly decide it in the full consciousness that 'time is of the essence.' " I refrained from either issuing or finally denying a stay on the papers before me. That, however, was without prejudice to the applicants to reapply to me should prompt action not be forthcoming. The applicants have now renewed their application for a stay.

One full week has elapsed since my in-chambers opinion was filed. No action has been taken by the Supreme Court of Nebraska during that week. The clerk of that court has stated, however, that the applicants have been allowed to docket their original application by way of mandamus to stay the order of the District Court of Lincoln County, and that the matter is set for hearing before the Supreme Court of Nebraska on November 25.

Whether the Nebraska court will reach a definitive decision on November 25, or very shortly thereafter, I do not know. Obviously at least 12 days will have elapsed, without action, since the filing of my in-chambers

opinion, and more than four weeks since the entry of the District Court's restrictive order. I have concluded that this exceeds tolerable limits. Accordingly, subject to further order of this Court, and subject to such refining action as the Supreme Court of Nebraska may ultimately take on the application pending before it, I issue a partial stay.

A question is initially raised as to my power and jurisdiction to grant a stay. As a single Justice, I clearly have the authority to grant a stay of a state court's "final judgment or decree" that is subject to review by this Court on writ of certiorari. 28 U. S. C. §§ 2101 (f) and 1257 (3). Respondents to the application for a stay have objected that there is no such "final judgment or decree" upon which I may act. The issue is not without difficulty, for the Supreme Court of Nebraska gives promise of reviewing the District Court's decision, and in that sense the lower court's judgment is not one of the State's highest court, nor is its decision the final one in the matter. Where, however, a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment. The suppressed information grows older. Other events crowd upon it. To this extent, any First Amendment infringement that occurs with each passing day is irreparable. By deferring action until November 25, and possibly later, the Supreme Court of Nebraska has decided, and, so far as the intervening days are concerned, has finally decided, that this restraint on the media will persist. In this sense, delay itself is a final decision. I need not now hold that in any area outside that of prior restraint on the press, such delay would warrant a stay or even be a violation of federal rights. Yet neither can I accept that this Court, or any individual Justice thereof, is

powerless to act upon the failure of a State's highest court to lift what appears to be, at least in part, an unconstitutional restraint of the press. When a reasonable time in which to review the restraint has passed, as here, we may properly regard the state court as having finally decided that the restraint should remain in effect during the period of delay. I therefore conclude that I have jurisdiction to act upon that state-court decision.

I shall not repeat the facts of the case. They were set forth in my in-chambers opinion of November 13. Neither shall I pause again to elaborate on this Court's acute sensitivity to the vital and conflicting interests that are at stake here. There is no easy accommodation of those interests, and it certainly is not a task that one prefers to take up without the benefit of the participation of all Members of the Court. Still, the likelihood of irreparable injury to First Amendment interests requires me to act. When such irreparable injury is threatened, and it appears that there is a significant possibility that this Court would grant plenary review and reverse, at least in part, the lower court's decision, a stay may issue. *Times-Picayune Pub. Corp.* v. *Schulingkamp,* 419 U. S. 1301, 1305 (1974). Taking this approach to the facts before me, I grant the requested stay to the following extent:

1. The most troublesome aspect of the District Court's restrictive order is its wholesale incorporation of the Nebraska Bar-Press Guidelines for Disclosure and Reporting of Information Relating to Imminent or Pending Criminal Litigation. Without rehearsing the description of those Guidelines set forth in my prior opinion, it is evident that they constitute a "voluntary code" which was not intended to be mandatory. Indeed, the word "guidelines" itself so indicates. They are merely suggestive and, accordingly, are necessarily vague. To cite

only one example, they state that the publication of an accused's criminal record "should be considered very carefully" and "should generally be avoided." These phrases do not provide the substance of a permissible court order in the First Amendment area. If a member of the press is to go to jail for reporting news in violation of a court order, it is essential that he disobey a more definite and precise command than one that he consider his act "very carefully." Other parts of the incorporated Guidelines are less vague and indefinite. I find them on the whole, however, sufficiently riddled with vague and indefinite admonitions—understandably so in view of the basic nature of "guidelines"—that I have concluded that the best and momentary course is to stay their mandatory and wholesale imposition in the present context. The state courts, nonetheless, are free forthwith to reimpose particular provisions included in the Guidelines so long as they are deemed pertinent to the facts of this particular case and so long as they are adequately specific and in keeping with the remainder of this order. That portion of the restrictive order that generally incorporates the Guidelines is hereby stayed.

2. No persuasive justification has been advanced for those parts of the restrictive order that prohibit the reporting of the details of the crimes, of the identities of the victims, or of the testimony of the pathologist at the preliminary hearing that was open to the public. See *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 487–497 (1975). These facts in themselves do not implicate a particular putative defendant. To be sure, the publication of the facts may disturb the community in which the crimes took place and in which the accused, presumably, is to be tried. And their public knowledge may serve to strengthen the resolve of citizens, when so informed, who will be the accused's prospective jurors,

that someone should be convicted for the offenses. But until the bare facts concerning the crimes are related to a particular accused, it does not seem to me that their being reported in the media irreparably infringes the accused's right to a fair trial of the issue as to whether he was the one who committed the crimes. There is no necessary implication of the person, who has been named as the accused, in the facts suppressed by paragraphs 4 and 5 of the District Court's restrictive order, and to that extent the order is hereby stayed.

3. At the same time I cannot, and do not, at least on an application for a stay and at this distance, impose a prohibition upon the Nebraska courts from placing any restrictions at all upon what the media may report prior to trial. Restraints of this kind are not necessarily and in all cases invalid. See *Branzburg* v. *Hayes,* 408 U. S. 665, 685 (1972); *Times-Picayune Pub. Corp.* v. *Schulingkamp,* 419 U. S., at 1307; *Newspapers, Inc.* v. *Blackwell,* 421 U. S. 997 (1975). I am particularly conscious of the fact that the District Court's order applies only to the period prior to the impaneling, and presumably the sequestration, of a jury at the forthcoming trial. Most of our cases protecting the press from restrictions on what they may report concern the trial phase of the criminal prosecution, a time when the jurors and witnesses can be otherwise shielded from prejudicial publicity, and also a time when both sides are being heard. See, *e. g., Craig* v. *Harney,* 331 U. S. 367 (1947); *Pennekamp* v. *Florida,* 328 U. S. 331 (1946); *Bridges* v. *California,* 314 U. S. 252 (1941). Restrictions limited to pretrial publicity may delay media coverage—and, as I have said, delay itself may be impermissible—but at least they do no more than that.

I therefore conclude that certain facts that strongly implicate an accused may be restrained from publication

by the media prior to his trial. A confession or statement against interest is the paradigm. See *Rideau v. Louisiana,* 373 U. S. 723 (1963); *Irvin v. Dowd,* 366 U. S. 717 (1961). A prospective juror who has read or heard of the confession or statement repeatedly in the news may well be unable to form an independent judgment as to guilt or innocence from the evidence adduced at trial. In the present case, there may be other facts that are strongly implicative of the accused, as, for example, those associated with the circumstances of his arrest. There also may be facts that are not necessarily implicative, but that are highly prejudicial, as, for example, facts associated with the accused's criminal record, if he has one. Certain statements as to the accused's guilt by those associated with the prosecution might also be prejudicial. There is no litmus paper test available. Yet some accommodation of the conflicting interests must be reached. The governing principle is that the press, in general, is to be free and unrestrained and that the facts are presumed to be in the public domain. The accused, and the prosecution if it joins him, bears the burden of showing that publicizing particular facts will irreparably impair the ability of those exposed to them to reach an independent and impartial judgment as to guilt. Of course, if a change of venue will not allow the selection of a jury that will have been beyond the reach of the expected publicity, that also is a factor.

4. Paragraph 6 of the restrictive order also prohibits disclosure of the "exact nature of the limitations" that it imposes on publicity. Since some of those limitations are hereby stayed, the restrictions on the reporting of those limitations are stayed to the same extent. Inasmuch as there is no point in prohibiting the reporting of a confession if it may be reported that one has been made but may not be spoken of, the provision in para-

graph 6 that the restriction on reporting confessions may itself not be disclosed is not stayed.

5. To the extent, if any, that the District Court's order prohibits the reporting of the pending application to the Supreme Court of Nebraska, and to the extent, if any, that the order prohibits the reporting of the facts of the filing of my in-chambers opinion of November 13, or of this opinion (other than those parts of the opinions that include facts properly suppressed), the restrictive order is also stayed.

6. Nothing herein affects those portions of the restrictive order governing the taking of photographs and other media activity in the Lincoln County courthouse. Neither is it to be deemed as barring what the District Judge may impose by way of restriction on what the parties and officers of the court may say to any representative of the media.

The District Court and the Supreme Court of Nebraska obviously are closer than I am to the facts of the crimes, to the pressures that attend them, and to the consequences of community opinion that have arisen since the commission of the offenses. The Supreme Court of Nebraska, accordingly, is in a better position to evaluate the details of the restrictive order. It may well conclude that other portions of that order are also to be stayed or vacated. I have touched only upon what appear to me to be the most obvious features that require resolution immediately and without one moment's further delay.