NEW YORK TIMES CO. ET AL. *v.* JASCALEVICH

No. A–111.   Decided August 4, 1978

MR. JUSTICE MARSHALL, Circuit Justice.

The New York Times and one of its reporters, Myron Farber, have reapplied to me for a stay of an order issued by the Supreme Court of New Jersey on July 25, 1978, after MR. JUSTICE WHITE denied their initial application on August 1, 1978. *Ante*, p. 1317.

At issue is the New Jersey Supreme Court's denial of a motion for a stay of civil contempt penalties imposed by the Superior Court of Bergen County in order to coerce the applicants to submit for *in camera* inspection materials sought by the defendant in a murder trial now in progress.  The New Jersey Supreme Court also denied the applicants' motion for direct certification of their appeals from the contempt orders entered by the Superior Court.

The applicants have requested a stay pending the filing and determination of their petition for certiorari, which would raise the issue

> "whether the First and Fourteenth Amendments to the Constitution of the United States permit a State to incarcerate and fine a newsperson or newspaper to force them

to disclose to a court, *in camera,* all materials, including confidential sources and unpublished information, called for by a subpoena *duces tecum, prior to* making determinations with respect to the facial invalidity of the subpoenas as well as claims of First Amendment and statutory shield law privileges, when such issues are raised in a motion to quash the subpoena *duces tecum.*"

Alternatively, they seek a stay pending review of those issues by the New Jersey appellate courts. This application was denied by MR. JUSTICE WHITE and then referred to me. Although a single Justice would ordinarily refer a reapplication for a stay to the full Conference of this Court, as we are now in recess and widely scattered, such a referral is not immediately practicable.

I

A preliminary question is whether a Justice of this Court has jurisdiction to grant a stay under the circumstances of this case. Under 28 U. S. C. § 2101 (f), the execution and enforcement of a judgment or decree may be stayed by a Member of this Court in "any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari." The application of that provision, in turn, depends upon 28 U. S. C. § 1257, which provides that this Court has jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had."

The proceedings relevant here began with an order of the Superior Court on June 30, 1978, denying the applicants' motion to quash the subpoena and directing them to produce the subpoenaed materials. The Superior Court declined to consider any constitutional or statutory claims of privilege until the applicants submitted the materials for *in camera* review. The applicants sought review of the Superior Court's order before the Appellate Division and the New Jersey Supreme Court, on the grounds they intend to raise in their

petition for certiorari. Both courts denied leave to appeal and declined to stay the order to produce. With the case in that posture, both Mr. Justice White and I denied the applicants' request for a stay.

Since the initial application for a stay, a different judge of the Superior Court on July 24 found the applicants guilty of both criminal and civil contempt for refusing to comply with the June 30 order to produce the subpoenaed materials. Without considering the issues that I previously had expected would be addressed in a contempt proceeding, see *ante,* at 1305–1306, the Superior Court held that the applicants could not raise their constitutional or statutory challenges to the validity of the June 30 order to produce. As a coercive sanction for the civil contempt, the court sentenced Farber to jail and fined the New York Times $5,000 per day until the applicants complied with the order to produce. On the criminal contempt charges, Farber received a sentence of six months in jail and the New York Times was assessed a fine of $100,000.

The applicants appealed both the criminal and civil sanctions, and the Appellate Division agreed to accelerate those appeals to the extent possible. The Appellate Division decided to stay the criminal penalties against the applicants, but not the coercive civil penalties, which mandate immediate imprisonment of Farber. On July 25, the New Jersey Supreme Court also declined to stay the coercive penalties and refused to certify the applicants' appeals for direct consideration by that court. At present, the Appellate Division still has not set a date for hearing the applicants' appeals.

In most cases where an appeal is still pending in the state courts, Members of this Court would not have jurisdiction to issue a stay under 28 U. S. C. § 2101 (f). See *United States* v. *Nixon,* 418 U. S. 683, 690–691 (1974). However, this Court has shown a special solicitude for applicants who seek stays of actions threatening a significant impairment of First Amendment interests. The inability of an applicant to

obtain timely substantive review by state courts of a serious First Amendment issue, prior to incurring substantial coercive penalties, may justify a determination that the applicant has satisfied the jurisdictional requirements of 28 U. S. C. § 2101 (f). Even though this application does not involve a direct prior restraint, MR. JUSTICE BLACKMUN's analysis in *Nebraska Press Assn.* v. *Stuart,* 423 U. S. 1327 (1975) (in chambers), is applicable here:

> "When a reasonable time in which to review the restraint has passed, as here, we may properly regard the state court as having finally decided that the restraint should remain in effect during the period of delay. I therefore conclude that I have jurisdiction to act upon that state-court decision." *Id.,* at 1330.

As in *Nebraska Press,* the delay by the appellate courts has left standing a serious intrusion on constitutionally protected rights. MR. JUSTICE WHITE credited these same First Amendment considerations when he determined to reach the merits of the present applicants' request for a stay. *Ante,* p. 1317.

## II

Although I agree with MR. JUSTICE WHITE's conclusion that he had the power to issue a stay at least until a final determination of the jurisdictional issue, I must differ with his conclusion on the merits of the constitutional questions raised by the applicants. As I observed in my previous opinion in this case:

> "There are, of course, important and unresolved questions regarding the obligation of a newsperson to divulge confidential files and other material sought by the prosecution or defense in connection with criminal proceedings. It may well be, moreover, that forced disclosure of these materials, even to a judge for *in camera* inspection, will have a deleterious effect on the ability of the news media

effectively to gather information in the public interest, as is alleged by applicants." *Ante,* at 1305.

Many potential criminal informants, for example, might well refuse to provide information to a reporter if they knew that a judge could examine the reporter's notes upon the request of a defendant.

Given the likelihood that forced disclosure even for *in camera* review will inhibit the reporter's and newspaper's exercise of First Amendment rights, I believe that some threshold showing of materiality, relevance, and necessity should be required. Cf. *United States* v. *Nixon, supra.* See generally *Carey* v. *Hume,* 160 U. S. App. D. C. 365, 492 F. 2d 631, cert. dismissed, 417 U. S. 938 (1974); *Baker* v. *F & F Investment,* 470 F. 2d 778 (CA2 1972), cert. denied, 411 U. S. 966 (1973); *Democratic National Committee* v. *McCord,* 356 F. Supp. 1394 (DC 1973). Examination of the record submitted with this application discloses that the Superior Court did not make any independent determinations of materiality, relevance, or necessity prior to ordering the applicants to submit the subpoenaed materials for *in camera* review.

Initially defense counsel submitted *ex parte* to the Superior Court Judge an affidavit averring the need for "notes, memoranda, reports, statements, tape recordings and other written memorializations" of Farber's interviews of witnesses. The affidavit provided only one example of a statement given to Farber by a potential witness. With respect to the other material requested, the affidavit included only a general assertion of necessity, but afforded no factual basis for the judge to determine whether any of the documents other than the statement mentioned above were material, relevant, or necessary for the defense. It cannot be supposed that the Superior Court Judge knew from conducting the trial that the material requested met those criteria, because counsel failed to specify the materials that came within the terms of his extremely broad request. Conclusory assertions by de-

fense counsel are insufficient to justify a subpoena of the breadth of the one involved here.

Moreover, an *ex parte* determination of materiality, relevance, and necessity provides little assurance that First Amendment interests will not be infringed unnecessarily. Without affording counsel for the applicants an opportunity to respond and narrow the scope of the subpoena, the Superior Court issued a certificate under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, N. J. Stat. Ann. §§ 2A:81–18 to 2A:81–23 (West 1976), for all documents in the possession of the applicants that

> "contain statements, pictures, memoranda, recordings and notes of interviews of witnesses for the defense and prosecution in the above proceeding as well as information delivered to the Bergen County Prosecutor's Office, and contractual information relating to the above."

Similarly, the second certificate issued by the Superior Court reveals no further consideration of materiality, relevance, and necessity. Although the certificate did add a list of a few of the witnesses who appeared at the trial, that listing at best argued in favor of a subpoena confined to documents regarding those particular witnesses.

Just as the Superior Court Judge did not make any independent determinations of materiality, relevance, and necessity before issuing the certificates to obtain the subpoenas, neither did he make those determinations before requiring *in camera* inspection. Even after the criminal and civil contempt proceedings, the applicants have been unable to obtain a state-court decision, except perhaps by implication from the Superior Court's order of June 30, on the issue of whether a judge must make a threshold determination of materiality, relevance, and necessity before requiring them to submit the materials for *in camera* inspection.

## III

Were I deciding this issue on the merits, I would grant a stay pending the timely filing of a petition for certiorari or at least pending the Appellate Division's consideration of the important constitutional and statutory issues raised by the applicants. But the well-established criteria for granting a stay are that the applicants must show "a balance of hardships in their favor" *and* that the issue is so substantial that four Justices of this Court would likely vote to grant a writ of certiorari. *Beame* v. *Friends of the Earth,* 434 U. S. 1310, 1312–1314 (1977) (MARSHALL, J., in chambers). The applicants here bear an especially heavy burden, for a single Justice will seldom grant an order that has been denied by another Justice. See *Levy* v. *Parker,* 396 U. S. 1204, 1205 (1969) (Douglas, J., in chambers).

After reviewing the applicable decisions of this Court, I cannot conclude in good faith that at least four Justices would vote to grant a writ of certiorari with the case in its present posture. See *United States* v. *Nixon,* 418 U. S. 683 (1974); *Branzburg* v. *Hayes,* 408 U. S. 665 (1972). Consequently, I am compelled to deny this application for a stay.