**FIRECROSS MINISTRIES,**
**et al., Plaintiffs,**

v.

**MUNICIPALITY OF PONCE,**
**et al., Defendants.**

**No. CIV. 01–2285(JP).**

United States District Court,
D. Puerto Rico.

April 5, 2002.

David Ramos Pagán, Esq., San Juan, Bryan J. Brown, Esq., Tupelo, MS, for Plaintiff.

José L. Gándara, Esq., Bauzá & Dávila, Grisselle González Negrón, Esq., Department of Justice of PR, Federal Litigation Division, San Juan, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I.  INTRODUCTION

The Court has before it Plaintiffs' "Motion for Preliminary Relief Pursuant to Fed.R.Civ.P. 65 (a or b), or, in the Alternative, Partial Summary Judgment Pursuant to Fed.R.Civ.P. 56(c)" **(docket No. 16)** and Defendant's Opposition thereto (docket No. 24).  The Court has heard arguments from both sides pertaining to the issues at hand.  Plaintiffs seek a Preliminary as well as a Permanent Injunction to prevent the Municipality of Ponce from interfering with the showing of "Alto Poder Rock Fest 2002".  In the alternative, they seek partial Summary Judgment regarding the constitutionality of Ponce's municipal law that prohibits events of a political or religious nature from being held at the municipal recreations complex.  For the foregoing reasons, the Preliminary Injunction is hereby **GRANTED.**

### II.  JURISDICTION

Plaintiffs have brought forth this action seeking injunctive relief to enjoin the Municipality of Ponce, Gerardo Tripari, Carlos Berríos, the Police force of the Municipality of Ponce, and Gilberto Colón, from interfering with a performance of religious content that Plaintiffs seek to perform.  Plaintiffs' claims arise under 42 U.S.C. § 1983 and alleged violations of their First Amendment rights of free speech, free exercise, and freedom of association, as applied through the Fourteenth Amendment, and breach of contract by the Municipality of Ponce.  This Court therefore has jurisdiction to hear this claim pursuant to 28 U.S.C. 1331 (West, 2000).

### III.  FINDINGS OF FACT

From the stipulations of facts entered into and between the parties hereto, the

admissions of the parties, the documentary evidence admitted into evidence, and the testimony of witnesses, the Court enters the following findings of fact:

1.  Plaintiffs filed the instant suit on September 26, 2001, alleging violations of their constitutional rights when Defendants interrupted the Alto Poder Rock Fest by turning off their power on October 28, 2000, although they had received permission from the Municipality for their performance.

2.  On October 28, 2000, Plaintiffs staged the Alto Poder Rock Fest 2000 for the second consecutive year.

3.  Alto Poder Rock Fest is a variety-type show that presents a religious message to its audience through rock music and personal testimony.

4.  Plaintiffs entered into a contract with the Municipality of Ponce and co-Defendant Tripari, as the city administrator, to lease the La Guancha Recreational Complex for the staging of Alto Poder Rock Fest 2000 on October 28, 2000 until 12 midnight.

5.  The Municipality of Ponce had passed a municipal ordinance that forbids shows of either a religious or political nature to take place at La Guancha complex.

6.  The ordinance states: "The area of the amphitheater shall be used for the presentation of artistic, cultural and recreational shows, among others, free of charge to the public. It shall not be utilized for the presentation of religious or political activities." (Court translation).

7.  In the middle of the performance, the complex custodian, co-defendant Berríos, called Plaintiffs' attention to the municipal law as several people addressed the crowd and explained how God had impacted their lives.

8.  Plaintiffs' production consisted of live rock music and personal preaching by band members and others who, in between band sets, talked to the crowd about Jesus Christ, their personal experience with religion and how it had changed their lives.

9.  Mr. Berríos informed Plaintiffs he would cut off the power if they did not cease to "preach" religion.

10. After a music number had ended and Mr. Dale Thompson had been preaching religion to the crowd for about 15 minutes Mr. Berríos cut off Plaintiffs' power.

11. Mr. Berríos cut off Plaintiffs' power at about 10:20 p.m., and Plaintiffs were forced to end the event roughly 1½ hours early.

12. Defendants also physically ejected Plaintiffs from the bathrooms and changing rooms of the facility.

13. The Municipality has defended its actions by citing the municipal law that prohibits any political or religious acts to be carried out at the complex as a "time, place and manner" regulation.

Further allegations dealing with findings of fact and conclusions of law:

14. On March 13, 2002, Plaintiffs filed the aforementioned motion, where they requested oral argument, or in the alternative, a ruling on any or all of their causes of action before April 10, 2002, since Plaintiff Sánchez Melo, President of Firecross Ministries, is scheduled to take the stage for Alto Poder 2002 at La Guancha Recreational Complex on April 11, 2002.

15. Plaintiffs asked this Court to either grant their request for preliminary

relief, or partial Summary Judgment declaring the Municipality of Ponce's law regarding the kinds of activities that can be carried out at the La Guancha Complex unconstitutional, since religious activities are prohibited.

16. In view of the regulation prohibiting religious affairs of the kind Plaintiff will display (show), as explicitly evidenced by findings of fact 7, 8, 9, 10, 11, and 12 herein, the Court concludes, as a matter of fact, that the request for use of the facilities was for a religious program composed of music and religious preaching.

17. The Ponce Municipal ordinance specifically prohibited this kind of activity.

## IV. CONCLUSIONS OF LAW

### A. *Preliminary Injunction Standard*

For injunctive relief to issue, the party seeking the preliminary injunction must establish that: (1) there is a substantial likelihood of success on the merits of the claim; (2) absent the injunction, there is a significant risk of irreparable harm; (3) the balance of hardships weighs in its favor; and (4) granting the injunction will not harm the public interest. *See Lanier Professional Services, Inc., v. Ricci,* 192 F.3d 1 (1st Cir.1999). It is with this standard in mind that the Court turns to the issue before it.

### B. *Discussion and Conclusions of Law*

1. *Substantial likelihood of success on the merits*

a. *Type of speech involved*

■ The Court first looks at the type of speech involved, since Plaintiffs' allegations, and their likelihood of success on the merits of the case, revolve heavily around this issue. The type of speech involved determines whether or not said speech receives constitutional protection.

The First Amendment provides, in relevant part, that "Congress shall make no law....abridging the freedom of speech or the press..." U.S. Const. Amend. 1. In an attempt to narrow down exactly what type of speech is actually protected, the Supreme Court has established several categories of speech which are deemed not to be protected by the First Amendment. Thus, the creation of these categories is tantamount to a finding by the Court that these types of speech are harmful. These categories are: obscenity, advocacy of imminent lawless behavior, defamation, fighting words and fraudulent misrepresentation. Unless the speech falls into one of the previously mentioned categories, it will automatically be deemed protected speech. *See generally R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

Plaintiffs allege the speech involved is religious speech. Defendants, however, allege that "it is not the content of the religious expression that is not allowed, but only preaching, a form of religious expression, that has been excluded." Defendant's Brief at 8; Docket No. 24. In other words, Defendants argue that the type of speech involved is not religious speech, but preaching, and that this distinction is key. By distinguishing religious expression from preaching, Defendant misconstrues what is protected speech under the first amendment.

The Court has examined the evidence before it concerning the type of speech involved, and finds a fatal flaw in Defen-

dant's argument. The Court cannot understand what other kind of religious discourse exists that would not be classified as preaching. By its very nature, religious discourse *is* preaching. Furthermore, the Supreme Court has made very clear the types of speech that are unprotected, and nowhere does it find that 'preaching' is an unprotected category under the First Amendment. As a matter of fact, on the contrary, the Supreme Court has very clearly held that preaching is protected speech under the First Amendment. *McDaniel v. Paty* 435 U.S. 618, 631, 98 S.Ct. 1322, 1330, 55 L.Ed.2d 593 (1978) (stating that the preaching and proselyting activities in which appellant was engaged as a minister constituted religious activity protected). *See also Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (protecting public worship); *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) (protecting distribution of religious literature). Therefore, Defendants have made a distinction without a difference.

It is quite clear to the Court that the speech involved is religious speech. Therefore, it is protected speech under the Constitution.

b. *Type of forum involved*

The Court next examines the type of forum involved as a factor in determining whether Ponce's regulation, that Defendants purport to be merely of the "time, place and manner" of the expression, nevertheless violates the First Amendment. If the regulation is "content based", it does not matter what kind of forum it takes place in; the regulation will be presumptively invalid, unless it falls within one of the unprotected categories of speech and is narrowly drawn to effectuate a compelling state interest. *Perry Ed. Ass'n. v. Perry Local Educators' Ass'n.,* 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). The Court will therefore exercise strict scrutiny in its analysis. *Burson v. Freeman,* 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992). If the regulation is "content neutral" and is applied in a traditional public forum, intermediate scrutiny follows, and the regulation must be narrowly tailored to serve a significant government interest and must leave open alternative channels of communication. *Perry Ed. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948; *Capitol Square Review and Advisory Bd. v. Pinette,* 515 U.S. 753, 761, 115 S.Ct. 2440, 2446, 132 L.Ed.2d 650 (1995).

Streets, sidewalks and parks are the most common examples of traditional public fora, and have been recognized as such for over 50 years. *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423(1939). Quiet streets in residential neighborhoods have also been classified as public fora. *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420(1988). More recently, it has been held that public facilities created for the primary purpose of communication are also traditional public forums, such as school boards and government meetings (*City of Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976)); a municipal theatre, (*Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)); and a band shell in a city park (*Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). In these traditional public fora, the government's right to limit expressive activity is "sharply circumscribed", and always subject to the protections of the First Amendment. *Perry Education Ass'n,* 460 U.S. at 44, 103 S.Ct. 948.

As far as the Court can ascertain, La Guancha complex is an open amphitheater, not unlike the one in *Ward*, with communication as its primary purpose, and thus traditionally classified as a public forum. Therefore, the Court, like in *Ward*, will analyze this case as one in which the complex is a public forum for performances· in which the government's right to regulate public expression is subject to the protections of the first amendment.

### c. *The regulation involved*

When the government regulates speech, the Court must examine whether the regulation or law passed is "content based" or "content neutral". A "content based" regulation means that the government is restricting the speech because of its content; that is to say, it is restricting speech because of the ideas or information contained in it, or because of its general subject matter. *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). A "content neutral" regulation, on the other hand, has nothing to do with the ideas expressed, but rather the attempt is at suppressing some 'evil' or other purpose unrelated to content of regulated speech, but which has the by-product of interfering with protected speech. *Ward*, 491 U.S. at 791, 109 S.Ct. 2746; *City · of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

When a "content based" regulation is imposed which restricts speech that does not fall within any of the aforementioned unprotected categories, there will be a strong presumption that the regulation is unconstitutional. *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). In that instance, the Court will apply strict scrutiny to its analysis, and the government bears the burden of proving that the regulation imposed on the speech is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that compelling state interest. *Id.; Carey v. Brown*, 447 U.S. at 461, 100 S.Ct. 2286; *Perry*, 460 U.S. at 45, 103 S.Ct. 948. Plaintiff argues that the Municipality of Ponce's regulation restricting religious speech at the complex falls into this category.

When a "content-neutral" regulation is passed, on the other hand, the Court applies the three part "time, place and manner" test to determine if the regulation is valid. The regulation must be "content neutral", or justified without any reference to the content or idea of the regulated speech; it must be narrowly tailored to serve a significant government interest; and it must leave open alternative channels of communication for the information. *Ward*, 491 U.S. at 791, 109 S.Ct. 2746, *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Perry*, 460 U.S. at 44, 103 S.Ct. 948; *Metromedia v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). Defendant Municipality of Ponce argues that the municipal ordinance falls under this category. Although the Municipality cites all the appropriate cases, their analysis of the regulation is erroneous.

In the case at bar, the Court perceives the regulation at hand to be "content based". The regulation has the effect of suppressing actual subject matter itself—religion and politics—as opposed to something unrelated to those two ideas. In essence, nothing that deals with these two *themes or ideas* can be portrayed at the complex, and thus, the regulation is "content based". Therefore, the Court presumes the regulation to be unconstitutional and must apply strict scrutiny. to its analysis. The·Municipality of Ponce now bears the burden of proving that the regulation

imposed on the speech is necessary to serve a compelling state interest and that there is no other less restrictive means to achieve that end.

The Court therefore concludes that the regulation forbids a protected type of speech, is "content based", and is thus subject to strict scrutiny. It can only survive strict scrutiny if the Municipality of Ponce can show a compelling state interest, and that the regulation is "necessary; that is to say, that the Municipality shows there is no other less restrictive alternative available. Because regulations subject to strict scrutiny almost never survive that analysis, Plaintiffs have thus shown a likelihood of success on the merits.

### 2. *Significant risk of irreparable harm*

■ Defendant argues that since Plaintiffs have been allowed to schedule the activity at the complex, no harm has ensued, and therefore, Plaintiffs' claim for injunctive relief cannot lie. Defendant misconstrues the standard and the purpose of injunctive relief.

One of the primary purposes of injunctive relief is to avoid any future harm that might befall a party. *See American Bd. of Psychiatry and Neurology, Inc. v. Johnson–Powell,* 129 F.3d 1 (1st Cir.1997) (stating that in deciding whether to grant preliminary injunction, a district court properly inquired into the question of future irreparable injury); and *National Tank Truck Carriers, Inc. v. Burke,* 608 F.2d 819, 824 (1st Cir.1979) ("The prime prerequisite for injunctive relief is the threat of irreparable future harm"). Therefore, Defendant's argument is unavailing.

It is also a long-standing principle that impairment of protected speech in and of itself constitutes irreparable harm. *In re Perry,* 859 F.2d 1043, 1047 (1st Cir.1988); *see also Nebraska Press Ass'n v. Stuart,*

423 U.S. 1327, 1329, 96 S.Ct. 251, 253, 46 L.Ed.2d 237 (1975). Therefore, the fact that Plaintiff has been silenced, or his speech chilled, is enough to constitute irreparable harm.

Another important issue that the Court must also consider in its determination of whether irreparable harm has ensued is the rationale behind injunctive relief itself—the belief that the injuries that a party may suffer cannot be adequately compensated by money. "It is settled beyond peradventure that irreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'" *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 19 (1st Cir.1996); *see also Starlight Sugar, Inc. v. Soto,* 114 F.3d 330 (1st Cir.1997); and *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907 (1st Cir.1989). The Court believes Plaintiffs' harm, the chilling of their protected speech, is an intangible harm not aptly measured or compensable by any monetary amount.

Additionally, the Court believes Plaintiff has already suffered harm when "Alto Poder Rock Fest" was taking place in October, 2000, and complex officials and the municipal police prematurely terminated the show. That deprived Plaintiffs of an opportunity to be heard and to convey their constitutionally protected message to the crowd present there. The Court therefore holds that Plaintiffs have met the second requirement of the preliminary injunction standard.

### 3. *Balance of hardship*

■ The Municipality would be hard pressed to argue that the balance of hardship weighs in its favor. First Amendment freedoms must always be protected; that is why they have a special, separate

place in the Constitution. Indeed, the addition of the Bill of Rights was the reason why the states ratified the Constitution at all. Puerto Rico received its first lessons in the culture of the Bill of Rights of the Constitution of the United States, which is the most impacting practical doctrine of the Constitution, and which is the one thing in the stretches of history that will mark with splendor the existence of the United States as a republican form of government, which was nothing new, for the Romans organized it long ago. This Court is obliged to stand by the vision of the Founding Fathers in protecting constitutional principles in Puerto Rico.

The Court cites Mr. Justice Douglas in the case of *Southeastern Promotions Ltd.*, when he stated, "I do not believe any form of censorship—no matter how speedy or prolonged it may be—is permissible". *Southeastern Promotions Ltd.*, 420 U.S. at 563, 95 S.Ct. 1239. This is especially important in cases dealing with constitutionally protected rights. Therefore, insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech.

### 4. *Harm to the public interest*

As Justice Holmes put it in his dissent in *Abrams v. United States,* 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173 (1919), that a "free trade in ideas" must exist, and that the "best test of truth is the power of the thought to get itself accepted in the competition in the market". Indeed, free speech, and to allow differing ideas to compete against one another, is one of the cornerstones of our democracy, and one of the leading principles under which the United States was founded. Therefore, suppressing protected speech innately harms the public interest as a whole. By finding harm to the public interest in De-

fendants' actions, the Court finds Plaintiffs have overcome the fourth prong of the standard for the issuance of a preliminary injunction.

## V. CONCLUSION

The Court finds that Plaintiffs have shown violations to their First Amendment rights of free speech, free exercise, and freedom of association, as applied through the Fourteenth Amendment. The Court therefore **HOLDS** that Plaintiffs have met their burden of proof and are entitled to a preliminary injunction. Therefore, pursuant to Fed.R.Civ.P. 65(d), the Court hereby **GRANTS** Plaintiffs' request for preliminary injunctive relief, and hereby **ISSUES** said preliminary injunction. Co–Defendants Municipality of Ponce, Gerardo Tripari, Carlos Berríos, the Police force of the Municipality of Ponce, Gilberto Colón and any and all of their successors, assignees, and employees, are to abstain and or refrain from enforcing the municipality's regulation regarding the kinds of shows that can be staged at La Guancha complex until such time as the Court can address the constitutionality of the same. They are further enjoined from interfering with the message that Alto Poder Rock Fest 2002 will convey, or from interfering with Plaintiffs' use and enjoyment of the La Guancha complex on April 11, 2002. The Court warns the parties failure to abide by this Order **SHALL** result in stiff sanctions, including, but not limited to, a finding of contempt, and stiff monetary sanctions against the parties and against counsel personally. This Order is effective until **Friday, April 12, 2002 at 3:00 p.m.**

After this Order expires on its own terms, the Court will Schedule an Initial Scheduling Conference to address the damages suffered by Plaintiffs, if any, Defendants' liability, if any, and the constitutionality of the Municipality of Ponce's law

regarding religious events at La Guancha Recreational Complex.

**IT IS SO ORDERED AND AD-JUDGED.**