REINHARDT, Circuit Judge,
dissenting:
We consider for collateral review, the class of cases involving appeals from orders granting or denying motions to seal competency proceedings. I would hold that the class satisfies each of the three requisite factors for establishing jurisdiction under the collateral order doctrine, Cohen v. Beneficial Ind. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and that we therefore have jurisdiction over all such appeals, including Guerrero’s appeal in this case. The majority recognizes that this class of cases meets the first and second Cohen factors. It errs on the third Cohen factor, however, when it focuses on attorney-client privilege, undervaluing the importance of First Amendment freedoms and privacy at stake in each appeal from a criminal case.
It is sometimes easiest to examine the class by using the illustration of the case before the court. I will therefore begin my analysis doing so here. In this death penalty case, the defendant seeks to seal the record of his competency hearing, at least until completion of his criminal proceeding. The district judge denied his request. Now, the majority refuses to permit him to appeal that ruling until after all the harm he seeks to avoid has been done. The majority’s holding eliminates any opportunity for Guerrero to protect his own privacy rights or the rights of those whose personal histories will be revealed during the course of his competency hearing. Even more important, the majority opinion, by holding that we lack jurisdiction over appeals from orders granting or denying motions to seal competency hearings, deprives future parties — defendants as well as others whose private lives are intertwined with theirs — from appealing the improvident denial of sealing orders.
Guerrero’s past, like that of so many death-eligible defendants, includes a lengthy and sordid history of varied forms of abuse and mental difficulties; a history that will be revealed in the course of his competency hearing. The allegations which will involve family members and others whose lives are intertwined with Guerrero’s will not be subject to legal pro *1005 cedures designed to ensure their accuracy or validity.
Guerrero stands accused of a sensational crime that has elicited intense public interest and concern; a factor common to most, if not all capital cases. In Guerrero’s case, the victim’s murder has been the subject of substantial, and continuing, news coverage, and was the impetus for a federal policy change authorizing the carrying of pepper spray canisters by guards in federal prisons. In death penalty cases, we are often faced with a district court’s need to consider sensitive, private information even before proceeding to trial, as well as a competing, and pressing, concern for maximum public disclosure. By contrast, neither of these factors is ordinarily present in run-of-the-mill non-capital cases. Pre-trial competency hearings in non-capital cases are rare and when they do occur they usually simply involve a diagnosis of the defendant’s present mental state rather than an exhaustive examination of his entire set of life experiences, especially alleged sexual abuse or torture, frequently by family members.
' As a result of the majority’s decision, Guerrero will have no opportunity to challenge the district court’s determination that the public, including potential jurors, have an unlimited right to review every aspect of his personal history as a result of the conduct of his court-ordered pre-trial competency proceeding. Moreover, the ramifications of this decision extend far beyond Guerrero’s individual appeal because the majority has effectively eliminated our jurisdiction over any appeal from an order denying a motion to seal a competency hearing, regardless of the weight of the privacy interests at stake.
In determining the question of whether we have jurisdiction over the order denying Guerrero’s motion to seal his hearing we must also consider the converse: whether this court has jurisdiction over a district court’s order granting a party’s motion to seal. If a party seeking closure prevails in the trial court, then the party opposing closure and seeking interlocutory appeal will most likely do so by asserting the public’s constitutional' right to access such proceedings — as the codefendant Sabían did in this case.[1] The competing interests at stake — public access and individual privacy — remain the same regardless of which party prevails in' the district court, and the outcome of an erroneous judgment would result in a similarly irreparable harm.
In Guerrero’s case, the party seeking appellate review represents the individuals whose privacy is threatened; but those interests are directly counterposed to the public’s right of access. Although the public’s First Amendment interests may have prevailed in the district court in this instance, such will not always be the case. Had the district court conducted the, necessary balancing test and determined that the relevant considerations weighed in favor of sealing Guerrero’s competency hearing, then the party seeking review would be representing the interests of the public and asserting its and their First Amendment rights.
Whether this court has jurisdiction over appeals from decisions regarding sealing orders cannot depend on whether the particular appellant is likely to win or lose on the merits of his appeal once jurisdiction is exercised. If we were to recognize jurisdiction over Guerrero’s claim and proceed *1006 to the merits, we would then conduct the separate analysis necessary to determine whether sealing is the proper result in this instance. First, we would determine the as yet unanswered question whether the qualified First Amendment right of access extends to pre-trial competency hearings. If it does, we would then consider whether a failure to seal would give rise to compelling interests on both sides, including whether it would affect Guerrero’s right to a fair trial. Should Guerrero’s interests as a whole outweigh the public’s First Amendment right, the court would then determine, in the individual case, whether there are alternatives to sealing that will effectively protect these rights. See Phoenix Newspapers, Inc. v. U.S. Dist. Ct. of Ariz., 156 F.3d 940 (9th Cir.1998); United States v. Brooklier, 685 F.2d 1162 (9th Cir.1982). Only if not would a sealing order be the proper remedy.
Guerrero’s case may or may not present a close question on the merits. That, however, is not the issue that we consider when we determine whether we have jurisdiction. To resolve the threshold jurisdictional question we must answer only whether the present class of orders presents an important issue, separable from the merits, that will be irrevocably resolved to the detriment of one of the parties supporting or opposing the order. I strongly disagree with the majority’s conclusion that we have no jurisdiction over the merits of an appeal of a district court’s order denying or granting a motion to seal a competency hearing, and that an aggrieved party must wait until one side or the other has suffered irrevocable injury before its appeal may be heard.
I.
The collateral order doctrine established under Cohen permits a court of appeals to review a final order that “conclusively determinéis] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment.” Perry v. Schwarzenegger, 591 F.3d 1147, 1154 (9th Cir.2010) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (internal quotation marks omitted).
It is uncontested that the first Cohen factor — a court’s conclusive resolution of a disputed issue — is satisfied in the district court’s order denying Guerrero’s motion to seal. It would similarly be satisfied by the district court’s order sealing a defendant’s competency hearing, for the reasons discussed below.
As to the second Cohen factor — whether the appeal presents an important issue that is completely separate from the underlying action — the case before us satisfies this requirement, as would an order granting the motion to seal. Although the majority agrees that the sealing issue is distinct from the merits of the government’s case against Guerrero and purports to recognize the importance of the issues at stake, I believe that its undervaluation of the interests presented here ultimately leads it to conclude, incorrectly, that Guerrero’s appeal fails to satisfy the third Cohen factor: that the district court’s order is not effectively unreviewable on appeal.
With regard to this third factor — whether the order is effectively unreviewable— the Supreme Court in Mohawk held that “the decisive consideration is whether delaying review until the entry of final judgment ‘would imperil a substantial public interest’ or ‘some particular value of a high order.’ ” 558 U.S. 100, 130 S.Ct. 599, 605, 175 L.Ed.2d 458 (2009) (quoting Will v. Hallock, 546 U.S. 345, 352-53, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006)). In its analysis of whether Guerrero’s appeal satisfies this criterion, the majority considers primarily his claim that the unsealing and *1007 denial of the motion to seal implicates his attorney-client privilege. It then rejects this argument based on the Supreme Court’s decision in Mohawk, in which the Court held that an evidentiary ruling in a civil case that implicates the attorney-client privilege is not reviewable under the collateral order doctrine. Although Guerrero argues unpersuasively that this privilege is also threatened by the district court’s denial of his motion to seal, attorney-client confidentiality is hardly the principal interest affected by the district court’s order here; nor is it the principal interest that we must consider in determining whether we have jurisdiction over this appeal, and others like it.
To determine whether we have jurisdiction to review an appeal under the collateral order doctrine, we must look not simply to the case before us, but to the class of cases of which it is a member. Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1992); See also Mohawk, 130 S.Ct. at 605 (“[Ojur focus is on ‘the entire category of cases to which a claim belongs’ ” (quoting Digital Equipment, 511 U.S. at 868, 114 S.Ct. 1992)). The interests implicated in a district court’s order regarding the sealing of a competency hearing involve recognized and highly regarded social values, and those interests (either Guerrero’s or the public’s) would be imperiled by a legally erroneous district court order. Aecordingly, the order is an appropriate subject for review under the collateral order doctrine. For the purposes of determining jurisdiction, it does not matter whether it appears to us that the appellant will ultimately prevail or not; or, to put it differently, whether we believe the particular order to be correct or erroneous. Nor does it matter whether we can conceive of other solutions than sealing all or none.
A district court’s order to seal — or to unseal — involves two sides. It involves the defendant’s (and his family’s and perhaps others’) interest in privacy;[2] at the same time it substantially implicates the public’s First Amendment right of access. The public’s constitutionally-protected right to observe criminal proceedings is viewed as “one of the essential qualities of a court of justice.” Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 566, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (internal quotation marks and citation omitted). Limitations on the public’s right of access, therefore, undoubtedly implicate a “substantial public interest.”
Competing against this First Amendment right, are the privacy rights of defendants as well as third parties not present in the underlying criminal proceedings, whose personal lives and tragedies are the subject of extensive examination in the course of competency proceedings.[3] This right is similarly recognized as a value of a *1008 high order, superceding even the public’s right of access under certain circumstances. In particular, the Court has recognized that the public’s First Amendment right may be required to yield to the weighty privacy interests of those involved in a criminal proceeding when the subject of disclosure constitutes is a personal history of sexual abuse. Press-Enterprise Co. v. Superior Court (“Press-Enterprise I"), 464 U.S. 501, 512, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (observing that the possibility that a member of the venire disclosed during voir dire that she, or a member of her family, had been raped was a “legitimate privacy interest” that must be balanced against the public’s right of access). Thus, the Court’s own precedents have established that the First Amendment and privacy interests at stake in the closure or failure to close a court proceeding are both values of a high order, albeit competing values.
Neither the privacy of the individuals whose personal histories may be disclosed in the course of a competency hearing, nor the First Amendment rights of those who may be denied access to the contents of such a hearing, will ever be vindicated if a district court improvidently grants or denies a motion to seal and that decision remains immune from collateral review. The First Amendment and privacy rights are competing interests in a motion to seal; thus regardless of whether the hearing is ordered to be sealed or unsealed, one set of interests will be irrevocably damaged if an erroneous order is issued and no immediate review is available. If the district court grants a motion to seal a defendant’s competency hearing because a substantial public interest, such as the defendant’s right to a fair trial or an individual’s right to privacy, requires that information be kept confidential, the public is denied timely access to an important, and possibly dispositive, criminal proceeding. Although the public may gain access to the transcript of these proceedings at some later date, after the trial and the inevitable appeals have concluded, delayed access to such information is nonetheless an “irreparable” injury that continues with “each passing day.” Nebraska Press Ass’n v. Stuart, 423 U.S. 1327, 1329, 96 S.Ct. 251, 46 L.Ed.2d 237 (1975) (Blackmun, Circuit Judge). Any remedy that may be obtained after the conclusion of the criminal proceeding is therefore insufficient to satisfy the public’s First Amendment right to “participate in and serve as a check upon the judicial process.” Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty., 457 U.S. 596, 605, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).
Similarly, there is no remedy for the individuals whose personal tragedies and histories of abuse may be revealed in the course of a defendant’s competency hearing, or even those family members or others who are the objects of false and malicious accusations. As we have observed on more than one occasion, “[sjecrecy is a one-way street: [o]nce information is published, it cannot be made secret again.” In re Copley Press, Inc., 518 F.3d at 1025; see also Islamic Shura Council of S. Cal. v. Fed. Bur. of Invest., 635 F.3d 1160, 1164 (9th Cir.2011). If, upon review after the disclosure of the information at issue, an appellate court determines that the competency hearing should not have been made public in its entirety, the affected individuals have no remedy that will render their private lives private once again. Allowing an order erroneously denying a party’s motion to seal to be implemented by denying immediate appellate review, undoubtedly damages the privacy of individuals in a manner that can never be undone. In short, an order granting or denying a motion to seal a competency hearing in a *1009 criminal proceeding satisfies all three elements of the Cohen test, and this court therefore has jurisdiction over Guerrero’s appeal.[4]
II.
The majority relies heavily on Mohawk in its decision to the contrary, but this reliance is misplaced. Neither the express holding of Mohawk, nor the rationale upon which it was based, supports a holding that we lack jurisdiction over an order granting or denying the sealing of a competency hearing of a criminal defendant. First, in its decision, the Supreme Court explicitly did not express a view as to whether its holding was intended to prohibit appellate courts from exercising jurisdiction under the collateral order doctrine over orders that pertained to rights other than the attorney-client privilege specifically at issue in that case. 130 S.Ct. at 609 n. 4. Second, erroneous evidentiary rulings such as that at issue in Mohawk, involve rights that can be effectively remedied by “vacating an adverse judgment and remanding for a new trial.” Id. at 607. As already discussed, reversal of the underlying judgment in the criminal case will not remedy, or even affect, the privacy or First Amendment rights implicated in the sealing order. Third, the alternative means of protecting attorney-client privilege that are available to civil litigants, as recognized by the Court in Mohawk, are either insufficient or unavailable to vindicate the privacy and First Amendment rights at issue here. Neither interlocutory appeals, which are available only to civil litigants, 28 U.S.C. § 1292(b), nor noncompliance with the court’s order is a feasible option for asserting the rights of members of the public who are denied access to criminal proceedings at the time they occur, or of the individuals whose histories are divulged in the process of a competency hearing and cannot ever thereafter become secret again.[5]
*1010 Lastly, in Mohawk the Court expressed a practical concern that permitting appeals under the collateral order doctrine of routine discovery orders that may implicate attorney-client privilege would “swamp the courts of appeal.” Id. at 608 (internal quotation omitted). As the majority opinion reveals, competency hearings are held in approximately one third of one percent of new criminal cases filed and “motions to seal competency proceedings are very rare” and almost never appealed. Maj. Op. at 996. Even in this case, absent the intervention by the co-defendant Sabían, the motion within the district court would have gone unopposed. Thus, unlike discovery orders, which are a routine part of nearly all civil litigation, competency hearings are rare, and, more important, attempts to seal them due to extensive pretrial publicity or privacy concerns are almost non-existent. The Supreme Court’s concern in Mohawk regarding opening the floodgates is therefore wholly inapplicable to orders regarding the sealing of competency hearings. Neither the Court’s holding, nor the logic upon which it is based, can justify the mechanical application of Mohawk to the present case.
III.
The majority arrives at its conclusion by making two crucial errors. First, it relies almost totally on the Supreme Court decision in Mohawk, as explained above, which has little, if any, relevance to the class of claims we must consider here. Despite the incongruence between the harm caused by the erroneous introduction of material covered by the attorney-client privilege in a civil case and the harm created by an erroneous ruling with respect to the sealing of competency proceedings in a criminal case, which is the true issue in the type of case before us, the majority focuses almost exclusively on Guerrero’s argument regarding attorney-client privilege to find that the outcome is compelled by the Court’s decision in Mohawk. In doing so, it gives little consideration to the other substantial rights that are affected by an order resolving the sealing of a competency hearing.
Second, the majority fails to recognize that the sufficiency of alternatives to sealing is a question that goes to the merits of the particular order granting or denying the motion to seal, and cannot be presumed for the entire class of claims. When the majority finally, and briefly, discusses the important concerns, aside from attorney-client privilege, implicated in orders regarding the sealing of competency hearings, it concludes that the alternatives to sealing would sufficiently protect any defendant’s right to a fair trial. Whether these alternatives are sufficient in the particular case is a merits question, to be considered only after it is determined that we do have jurisdiction. Moreover, this is a question that must be decided on a case-by-case basis by considering the particular interests implicated and the feasibility of these other options given the facts and circumstances of the individual case. If we could say that these alternative sufficed in every case, then the district court could never justifiably grant a motion to seal, or it could deny such a motion without the particularized inquiry that the law requires. Brooklier, 685 F.2d at 1167 (recognizing that the district court’s failure to conduct the particularized inquiry regarding the interests implicated and the sufficiency of alternatives was error). Additionally, because we must also consider within this class of claims the appeal of orders granting a motion to seal, the majority’s reference to the sufficiency of alternatives is of no relevance to parties who are erroneously denied access because the court incorrectly deemed those alterna *1011 tives insufficient in the particular case before it. Such parties are equally deprived of access under the rule the majority establishes today. Whether the alternatives proposed by the district court satisfactorily protect Guerrero’s asserted rights — -which would additionally include his right to a fair trial once the merits of his sealing motion are considered — is a matter unrelated to whether we have Cohen jurisdiction over this entire class of cases, or to whether the privacy interests implicated by such orders may ever be vindicated upon appellate review of the underlying criminal proceeding following their completion.
The importance of the competing rights at stake with respect to motions to seal competency hearings, and the inability to vindicate those rights effectively (on one side if the order is granted and the other if it is denied) after the resolution of the underlying criminal matter, renders this order a proper subject for review under the collateral order doctrine. It would be difficult to imagine another set of rights that we hold in comparably high regard, and for which the injury inflicted by an erroneous judgment would be similarly incurable upon delayed review. For the foregoing reasons, I respectfully dissent from the majority’s opinion holding that we do not have jurisdiction under the collateral order doctrine to consider Guerrero’s appeal. Although I would hold that jurisdiction over this appeal is proper under Cohen, I express no view as to the correctness of the district court’s order denying sealing. Because, Guerrero’s claim is properly considered under our collateral order jurisdiction, I would dismiss the petition for the writ of mandamus and determine on the merits whether Guerrero’s competency hearing should be sealed, rather than conclude merely that, even if the district court erred, the error was not clear as a matter of law.
I dissent.

. Although the trials were severed and Sabían was no longer a party to Guerrero’s underlying criminal proceeding, a co-defendant (or even the defendant himself if the government is the party seeking closure) could assert this First Amendment right if another party sought to have some or all of the material submitted in the course’ of the competency proceeding sealed.

. Depending upon the evidence that the government seeks to introduce at that hearing, it is also plausible that it may seek closure in the interest of the privacy of its own witnesses.

. The sealing of the competency hearing also implicates the defendant’s right to a fair trial. Although this is undoubtedly a value of the highest order, Press-Enterprise Co. v. Superior Court ("Press-Enterprise I”), 464 U.S. 501, 512, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("No right ranks higher than the right of the accused to a fair trial.”), rights that “can be protected adequately by post-conviction appellate review” are generally insufficient to fulfill the third Cohen requirement. United States v. No Runner, 590 F.3d 962, 966 (9th Cir.2009); see also Flanagan v. United States, 465 U.S. 259, 268-69, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). The right to a fair trial has been held to be such a right. United States v. No Runner, 590 F.3d at 966. Although concern for a defendant's right to a fair trial is insufficient to establish jurisdiction under the collateral order doctrine, if we do have jurisdiction over the collateral appeal, then a ruling on the merits necessarily involves considering Guerrero’s fair trial rights *1008 as we evaluate the correctness of the district court’s order.

. Even if we were to treat the two orders— those denying a motion to seal a competency hearing and those granting such a motion — as different classes of orders for the purposes of determining our jurisdiction, and were to consider in this case only whether the Cohen factors are satisfied by the district court’s order denying a motion to seal, the argument in support of collateral order jurisdiction would be at least as strong. First, it is clear that once information is released, the individual’s interest in keeping the information private has been conclusively determined. See, e.g., In re Copley Press, 518 F.3d at 1025 ("An order to unseal thus ‘conclusively determine[s]’ that the information will be public.’’). Second, as the majority agrees, the sealing order is an issue that is completely separate from the merits of Guerrero’s underlying criminal case. Finally, for the same reasons that the privacy issue is conclusively determined upon the release of an individual’s private personal history, the issue is effectively unreviewable on appeal because there is no effective remedy that may be had once the information has been made public. Indeed, as we have already recognized, an appeal challenging an order unsealing documents in a criminal proceeding satisfies all three Cohen requirements for these precise reasons, and we must similarly recognize that an order denying a motion to seal similarly satisfies these elements. See id.

. The final avenue through which a party may challenge an adverse court order cited by the Court in Mohawk is through a petition for a writ of mandamus. Id. at 607. Although this option is theoretically available to defendants such as Guerrero, as the majority opinion illustrates even when a court exercises mandamus jurisdiction, relief is warranted only where the district court’s order was clearly erroneous. A reversal cannot be granted in cases in which the error of the district court’s ruling is not patently obvious but a proper application of the law nonetheless compels a different result. Certainly, after the majority’s opinion becomes circuit law, a party will be able to file a petition for mandamus but will rarely, if ever, be able to show a clear error and thus will not be able to obtain mandamus relief.