[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this application, The New York Times Company (The Times) requests the court to make available to the public all records, including sealed portions thereof, in 23 cases[1] alleging sexual abuse of minors by clergymen affiliated with the Bridgeport Roman Catholic Diocesan Corporation (Diocese). On March 26, 2002, The Times filed motions to intervene[2] and to seek the relief requested in this application in the following cases: Rosado v. Bridgeport Roman Catholic DiocesanCorporation, CV-93-0157085-S, See v. Bridgeport, CV-93-0157363-S andFleetwood v. Bridgeport, CV-95-0156274-S. In view of the fact that those cases had been withdrawn on March 12, 2001, and the applicant (The Times) had never been a party, the clerk's office was unable to docket The Times' motions. The files in the three Diocese cases referenced above, as well as the additional 20 cases involving allegations of sexual abuse of minors by priests affiliated with the Diocese, were subject to destruction by the clerk's office on March 12, 2002.[3] The clerk's office had not, in fact, destroyed any of the 23 files when the application was filed on March 26, 2002, and the files are currently in the custody and control of the Waterbury Superior Court and its clerk's office.
Pursuant to Practice Book § 17-4 and General Statute § 52-212a, the court, generally, does not have jurisdiction to open a judgment unless a motion to open or set aside is filed within four months. A withdrawal is equivalent to a final judgment for purposes of General Statutes § 52-212a. See Smith v. Reynolds, 54 Conn. App. 381, 383,735 A.2d 381 (1999); Sicaras v. Hartford, 44 Conn. App. 771, 778,692 A.2d 1290 (1997). The undersigned judge, to whom the 23 Diocese cases had been assigned, in discussions with the clerk's office and the presiding civil judge of the Waterbury Judicial District, determined that opening a new file would serve as the most efficient tool for resolving the issues raised by The Times' application.
In connection with their March, 2002 motions, The Times filed a request for an emergency hearing. The court initially scheduled the hearing for CT Page 5903 April 16, 2002, but at the request of counsel for the Diocese, the hearing was continued to April 24, 2002. The Times as well as the appearing counsel and pro se parties to the original litigation who were served with The Times' application also were afforded an opportunity to file briefs by April 23, 2002. The Diocese filed a 75-page brief supported by hundreds of pages of exhibits. The parties were heard in oral argument between 10:00 a.m. and 1:00 p.m. on April 24, 2002, and afforded an opportunity to further brief the issues by May 6, 2002, with any reply briefs due on May 9, 2002.
At the hearing, after granting a pro hac vice motion and permission for filing the Diocese's brief in excess of the required limit, the court addressed the challenges to its jurisdiction. On page 32, line 11, of the transcript of the April 24th hearing, the court made the following initial determination regarding jurisdiction:
 We'll continue with discussion on the merits. I believe I do have jurisdiction, certainly with respect to what is in the clerk's office, in sealed envelopes. I think, I do not have jurisdiction to order the parties to file anything, so I really don't feel that there is jurisdiction to enter that type of order.
 So we will move onto the merits. We will afford the parties an opportunity, not a very lengthy one, to address these jurisdictional issues, and we'll talk about that before we finish today.
 Mr. Stapleton (counsel for the Diocese): What your honor just said is not a ruling, it's going to be subject to further briefing or —
 The Court: Yes, it will be subject to further briefing, yes. You can address the jurisdictional issue, my determination is that I do have jurisdiction, at least with respect to what's been sealed in the files.
 Mr. Stapleton: Your honor is ruling on that point today?
 The Court: Yes, subject to being revisited, but we are going to proceed with the discussion of the merits of the claim.
The proceedings then continued with the discussion of the merits of providing public access to materials sealed in the withdrawn cases. CT Page 5904
On May 3, 2002, the Diocese responded to the court's April 24th
invitation for further briefing with an appeal of "the Trial Court's 4/24/02 order restoring cases to docket, after passage of more than four months since withdrawal." The court on May 3, 2002, was notified by letter from John B. Farley, Esquire, also counsel for the Diocese, as follows:
 Enclosed are courtesy copies of the appeals we have filed on this date in the above-referenced matters. In light of the automatic stay triggered by these appeals, we will not be filing any further briefs at this time. Should further proceedings be ordered in the future, we reserve our rights to file supplemental briefs at that time.
Practice Book § 61-11, Stay of Execution in Noncriminal cases, addresses the automatic stay as follows:
 (a) Automatic stay of execution Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order appealed from shall be automatically stayed until the time to take an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause.
The court views the rule as in no way affecting its jurisdiction and obligation to resolve the issues presented by The Times' application. There has been no judgment on The Times' application, until this memorandum of decision was filed. Characterization of the trial court's April 24th ruling as restoring the Diocese cases to the docket is completely erroneous. None of the 23 files has been reopened; the disposition status of each file indicates that the file was withdrawn in March, 2001. The court specifically indicated that it did not have jurisdiction over the parties and the court did not enter any rulings in the 23 cases. The court views the correspondence of May 3, 2002, as an inappropriate effort to interfere with the court's obligation to carry out its duties and render a judgment in the application pending before it.
The court further views the Diocese's correspondence and failure to file a brief as indicative of the Diocese's express waiver of the right to be heard further on the merits of The Times' application.
The Times' application, which the Hartford Courant subsequently moved CT Page 5905 to join in support, presented the court with the issue of public access to documents within the control and custody of the Superior Court of the State of Connecticut. Practice Book § 17-4 and General Statutes § 52-212a, depriving the court of jurisdiction after the passage of four months from the filing of a judgment (or withdrawal), address only personal jurisdiction over the parties. See Smith v. Reynolds, supra,54 Conn. App. 383; Sicaras v. Hartford, supra, 44 Conn. App. 778; In re:Baby Girl B, 224 Conn. 263, 288, 618 A.2d 1 (1992). The Practice Book rules and the General Statutes in no way deprive the court of subject matter jurisdiction and certainly do not deprive the court of jurisdiction over files in its custody and control. In the absence of the court asserting jurisdiction over its own files, how are the public and the parties to resolve disputes relating to files remaining in the custody of the court for at least eight months after the expiration of the four month period to reopen? If not resolved through the judicial process, then resolution of such disputes would result at the discretion of the clerk's office or by physical altercation. The court finds that it is essential to the exercise of its inherent powers that the court retain jurisdiction over files that are in its custody.
Connecticut law mandates that custody of the court's inactive files remain with the court. General Statutes § 51-52 (b). Also see 23 Op. Att'y Gen. 141 (1993) and Practice Book § 7.7. The statutory authority, the Attorney General's opinion and the Practice Book rule all state the obvious — that the court has custody and control of its own files.
The applicants seek to vindicate the public's right of access to public records. Elrod v. Burns, 427 U.S. 347, 373 49 L.Ed.2d 547, 9 S.Ct. 2673
(1976). The public right of access is protected by the First Amendment to the Constitution of the United States. Nebraska Press Association v.Stuart, 423 U.S. 1327, 1329, 46 L.Ed.2d 237, 96 S.Ct. 251 (1975). The implication of these fundamental constitutional issues mandates prompt judicial resolution of The Times' application. Globe Newspaper Companyv. Pokaski, 868 F.2d 497, 507 (1st Cir. 1989), Nebraska Press Associationv. Stuart, supra, 427 U.S. 561.
The Diocese, in its initial response to the court's April 10, 2002 scheduling order, requested a minimum 60-day period to respond. Ultimately in its brief on the merits, the Diocese outlined a process ensuring the frustration of any public entitlement to the information in a timely fashion. The purported "appeal" of a decision never entered by this court is once again an effort to frustrate the court's adjudication of a matter of public interest.
On April 24, 2002, the same date as the initial hearing, The Times and CT Page 5906 Hartford Courant both featured lead headlines on the issue of sexual abuse of minors by priests.[4] Such coverage was typical for the weeks and months preceding the day of the hearing and the days following. The 23 cases against the Diocese about which this court is familiar all involve allegations of sexual abuse of minors by various priests affiliated with the Diocese including, in at least some instances, allegations of forcible rape. In addition to the Diocese, the defendants in those 23 cases include the former Bishop of the Bridgeport Diocese, now Cardinal Egan, who, at the time of the hearing, was one of the twelve American cardinals summoned to a meeting with the Pope in the Vatican concerning the issue of sexual abuse of minors by priests. The plaintiffs in the 23 cases sought to hold the Diocese responsible for the unauthorized acts of a small number of priests, based on a theory of a decades-long conspiracy and cover-up whereby abusive priests were protected by a system of reassignments and treatment for the priests while at the same time bullying and/or misinforming the victims. The withdrawal of the litigation precludes any resolution of the validity of such claims; however, concerning a matter of such widespread public interest, the judicial system should not be a party to a cover-up by denying access to such information.
For the following reasons, the court is ordering the disclosure of certain sealed records contained in the 23 files in the custody of this court.
In applying the "invasion of personal privacy" statutory exemption to the Freedom of Information Act in Perkins v. Freedon of InformationCommission, 228 Conn. 158, 169-75, 635 A.2d 783 (1993), Chief Justice Peters reviewed the history of personal privacy, its common law recognition and its treatment by the Restatement (Second) of Torts. Acknowledging that the definition of privacy varies with the context in which it is raised, the court adopted the tort standard, which recognizes the right of privacy only if the matter "is not of legitimate concern to the public." Id., 172, relying on § 652D of the Restatement (Second) of Torts.
The legitimate interest of the public in these allegations trumps the privacy rights of clerics and their church. The allegations recite numerous incidents of sexual abuse of minors over a period of decades, which horrors were covered up by the Diocese. The public has a legitimate interest in the information relevant to the allegations. The existence of the legitimate public interest precludes the recognition of individual privacy rights. The court's review of what has been marked sealed by the clerk's office discloses seven boxes of documents including pleadings, transcripts of court proceedings, court rulings and other material which cannot fall within the parameters of an order issued pursuant to Practice CT Page 5907 Book § 11-20b. The Practice Book rule requires that "any such order shall be no broader than necessary to protect such overriding interests." There is no order in the 23 cases in the custody of this court which encompasses all of the material currently marked "sealed," nor could there be. See Doe v. Hartford Roman Catholic Diocesan Corp.,51 Conn. App. 287, 291, 721 A.2d 154 (1998). The public is being denied access to public information on a matter of great public interest in contravention of the rules governing the Connecticut Superior Court.
The most comprehensive protective order and sealing order in the files is that of Judge Levin in the Rosado case, which includes temporary orders contemplating their termination at the commencement of jury selection, but meanwhile protecting the defendants' right to a fair trial. The Levin decision rejects the other claims for sealing the information and acknowledges the legitimate public interest. It certainly doesn't follow that the temporary order to protect the right to trial became permanent when the settlement avoided any trial. A more logical conclusion is that the order ended by its own terms with the avoidance of trial by settlement. This court concludes that there is no valid order denying the public access to the materials in the sealed files.[5]
In view of the extraordinary legitimate public interest in the issue of sexual abuse of minors by priests, it is inconceivable that the defendants in the 23 cases, or the John Doe priests never made parties to any litigation, would have an interest that might override the public concern in viewing these materials as required by General Statutes §11-20. Judge Sweeney noted in Leary v. Geoghan [a similar abuse case], Massachusetts Superior Court, Norfolk County, No. 99-0371 (Nov. 26, 2001), at page 10: "It is difficult to conjure up an argument that would persuade a reasonable person that many of the issues raised in these cases and their underlying discovery documents do not lend themselves to public scrutiny." The same conclusion follows when considering "good cause" for a protective order. The court declines to adopt the Diocese's argument that protective orders do not implicate First Amendment rights. SeattleTimes Co. v. Rhinehart, 467 U.S. 20, 81 L.Ed.2d 17, 104 S.Ct. 2199
(1984), merely holds that the "good cause" standard of Fed.R.Civ.P. 26
(c) can properly balance First Amendment and confidentiality rights. SeeAnderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986). Judge Levin's sealing order in the Rosado case, being temporary by its own terms, would not require the finding of "extraordinary circumstances" required inSecurities and Exchange Commission v. TheStreet.com, 273 F.3d 223 (2d Cir. 2001). TheStreet.com decision specifically holds that temporary orders do not justify reliance by the parties so as to require a finding of extraordinary circumstances for modification.
If this court were required to find extraordinary circumstances, CT Page 5908 however, they certainly exist here. On April 23-24, 2002, in an unprecedented meeting, the Pope and selected American cardinals met specifically on the subject of sexual abuse of minors by clergy. Today's newspapers note the extradition from California to Massachusetts of Father Paul Shanley, where he faces three counts of child rape. The media also have made us aware of a court order directing Cardinal Law of the Boston Diocese to submit to a deposition on cases alleging sexual abuse of minors by a priest affiliated with the Boston Diocesan Corporation. Law enforcement agencies are investigating sexual abuse cases and developing protocols for reporting such complaints. If these are not the circumstances that elevate the public interest over the interest of the litigants, how could such a scenario be imagined to exist?
The Diocese asserts a constitutional right to privacy, citing Whelanv. Roe, 429 U.S. 589, 600, 51 L.Ed.2d 64, 97 S.Ct. 869 (1977), andGriswold v. Connecticut, 381 U.S. 479, 486, 14 L.Ed.2d 510, 85 S.Ct. 1678
(1965). Certainly a right of privacy exists, but with equal clarity, the right to personal privacy does not protect criminal and tortious behavior, or prevail over the legitimate public interest. Globe NewspaperCo. v. Superior Court, 457 U.S. 596, 73 L.Ed.2d 248, 102 S.Ct. 2613
(1982); Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 43 L.Ed.2d 328,98 S.Ct. 1029 (1975). Also see Perkins v. Freedom of InformationCommission, supra, 228 Conn. 635, and the Restatement (Second) of Torts § 652D.
In the 23 cases of alleged sexual abuse of minors by priests listed in footnote 1 above, the plaintiffs claim a Diocesan-led cover-up of the abuse and protection of the abusers over the victims. Information relating to claims of criminal sexual abuse of minors and the Diocese's response is not protected by privacy interests over the public's legitimate interest. The public interest exists not only with respect to the Diocese's response to the allegations, but also is to be found in any facilitation of the cover-up by the courts, which now hold a plethora of sealed abuse complaints which the plaintiffs have never sought to have suppressed. Recognition of the public's right to review the workings of government, including its judicial system, is widely acknowledged. Nixonv. Warner Communications, Inc., 435 U.S. 589, 598, 55 L.Ed.2d 570,98 S.Ct. 1306 (1978); Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 606
(2000).
The court at the April 24, 2002 hearing invited the parties to submit briefs by May 6, 2002, and reply briefs by May 9, 2002. Briefs have been submitted by The Times, the Hartford Courant, and by counsel for one of the defendant priests, who, upon his own representation today, does not intend to file a reply brief. Thus, there is no need to wait for reply briefs. The court therefore performs its duty and hereby adjudicates The CT Page 5909 Times' application.
The Diocese and the "John Doe Priests" intervenors have asserted in the 23 cases privilege claims with respect to certain documents. The court envisions that such claims would be limited to psychiatric records[6]
or documents naming the "John Doe" priests. Such claims as well as any other bonafide claims of privilege shall be asserted by a privilege log which shall be filed no later than May 15, 2002. The privilege log shall identify each document claimed to be privileged by a general description, date, author, recipient(s); and succinctly state the privileged claim. The privilege log must be filed on May 15, 2002, and served on counsel by facsimile transmission on the date of filing.
Any party objecting to any privileged designation shall file such objection by May 22, 2002.
The court will hear and decide those claims of privilege as asserted in privilege logs on May 24, 2002 at 10:00 a.m. in courtroom 3B, 400 Grand Street, Waterbury, Connecticut.
The documents currently designated as sealed in the 23 cases which are not designated as privileged by May 15, 2002 will be available for public examination
____________________ ROBERT F. McWEENY